36 PENN. ST. 29

## Schenley *et ux.* *versus* The Commonwealth for the use of The City of Allegheny.

An objection to the jurisdiction of the court, which goes, not to its judicial power, but to the mode in which the case is brought before it, will not avail the defendant, after a general appearance and plea in bar.

A *scire facias* upon a municipal claim, is an original, not a judicial writ, and does not necessarily issue from the court in which the claim is filed.

Under the Acts of 16th June 1836, and 13th March 1844, the District Court of Allegheny county, has power to issue writs of *scire facias* upon municipal claims filed in the Court of Common Pleas, without their being certified from the latter court.

The construction given to the Act of 16th April 1840, in The City of Philadelphia *v.* Sutter, 6 *Casey* 53, is not applicable to claims filed under the Act of 30th March 1852.

The Act of 16th April 1845, limiting the time for filing municipal claims to six months after the performance of the work, does not apply to claims filed under the Acts of 5th April 1849, and 8th April 1851; by the Act of 30th March 1852, such claims may be filed *at any time* after demand made upon the lot-owner, and the assessment remains a lien until fully paid and satisfied.

An Act of Assembly validating a city ordinance, for the grading and paving of certain streets, which had become null and void, for want of being duly recorded, is not unconstitutional, because it provides that the omission to record, shall not affect or impair the lien of the assessments against the lot-owners.

The legislature, provided it violate no constitutional prohibition, may pass retrospective laws, which affect suits pending, giving a party a remedy that he did not previously possess, modifying an existing one, or removing an impediment in the way of legal proceedings.

The dedication of land for a public highway, may be presumed against a married woman, from the fact of its long-continued use as such by the public, during the continuance of a lease of the premises, and her omission to resume her rights, as the reversioner, for four or five years after the expiration of the term. Twenty-one years' adverse enjoyment, is not necessary to perfect the presumption.

To avoid the presumption of a grant from lapse of time, the disability of coverture cannot be added to that of infancy.

In the absence of fraud or gross extravagance, the liability of a lot for grading and paving, is measured by the expense actually incurred, whether the work was done by contract or not, and not by the *value* of the work. Such claim, if not paid on demand, bears interest.

The power to pave includes the power to furnish and do all that is necessary, usual, or fit for paving. Whether or not, curbstones are ordinarily used in paving sidewalks, is a question of fact for the jury.

The expense of paving a whole street, intersected by other streets, may be apportioned upon each block respectively, though the entire front upon the street belongs to the same owner.

The liability of the lot-owners is not affected by the terms of the agreement between the city and the contractors, nor by the fact, that certain of the city officers were interested in the contract under which the work was done.

It is not error, to reject evidence to contradict testimony, which was itself irrelevant or immaterial.

ERROR to the District Court of *Allegheny county.*

This was a *scire facias* by The Commonwealth of Pennsylvania,

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

for the use of The City of Allegheny, against Edward W. H.
Schenley and Mary E. Schenley, his wife, upon a municipal claim
filed in the Court of Common Pleas, for the expenses of grading
and paving First street, in the city of Allegheny, opposite the
lots of the defendant, Mary E. Schenley, and bounding thereon.

Mrs. Schenley was the owner of a large tract of land in the
north-eastern part of the city of Allegheny, which she acquired
by descent from her mother, Mrs. Croghan, who died in 1830.
At that time, the property was in the occupancy of Mr. Garrard,
under a lease for twenty-one years, which expired in 1851; and
during his occupancy, it was laid out and divided into squares by
regular streets and alleys, but by whom, or under whose autho-
rity, did not appear. · These streets and alleys had ever since re-
mained open, and been used as public highways, and the defend-
ants themselves had leased and sold lots conforming thereto.
Mrs. Schenley was married to Captain Schenley at the age of
about fifteen years, and at the trial, on the 8th June 1859, was
about thirty-one years of age.

By Acts of 5th April 1849 (*Pamph. Laws* 341) and 8th April
1851 (*Pamph. Laws* 372), the councils of the city of Allegheny
were authorized and empowered to grade and pave any permanent
streets, lanes, alleys, or sidewalks, within the corporate limits of
the city, and to levy and collect a special tax to defray the costs
and expenses of the same, by an equal assessment on the lots
fronting thereon; which tax, it was further provided, should remain
a lien upon the said lots, until fully paid and discharged. The
Act of 30th March 1852 (*Pamph. Laws* 204) prescribed the mode
of collecting such assessments.

The city councils, by ordinance of 21st June 1855, authorized
the grading and paving of First, Second, Third, West, and other
streets, traversing the land of the defendants; and empowered the
committee on streets to invite and receive proposals for grading
and paving the same, together with sidewalks and curbstones, and
to contract therefor with the lowest bidder; and levied a special
tax to defray the costs and expenses of the work, to be equally
assessed upon the several lots bounding and abutting upon the said
streets respectively; and providing further, that when such cost
and expense should be fully ascertained, it should be the duty of
the street commissioner to assess and apportion the same among
the said lots; and thereupon to demand and collect the same, in
pursuance of the said Act of 30th March 1852.

This ordinance was duly published, as required by the city
charter, but was not recorded until the 9th February 1859, in con-
sequence of which, by the terms of the charter, it became null and
void. To cure this defect, an Act of Assembly was passed on the
2d February 1859, after the institution of this suit (*Pamph. Laws*
20), providing that the omission to record the same should not impair

or in any manner affect the contracts for grading and paving the said streets, or any assessment, tax, lien, or claim for the cost of grading and paving done or to be done in pursuance of, or in accordance with, the provisions of the said ordinance.

In pursuance of this ordinance, the committee on streets invited proposals for doing the work; and on the 18th July 1855, the contract was awarded to Palmer & Tyler. Tyler subsequently withdrew from the contract, with the consent of the committee, and it was awarded to Palmer, Gang & Co., upon the same terms. Adams and Girst were members of this firm, the former being the mayor, and the latter a member of the city counsels. During the progress of the work, Adams sold out his interest to Grebing, who sold to McIntyre, and a new firm was formed under the name of Gang, McIntyre & Co., to whom Palmer sold out.

The execution of the work was superintended by the street commissioner and committee on streets; it was finished about the middle of November 1856, when it was finally examined and approved by them, and. taken off the hands of the contractors. While the work was progressing, a present of a gold watch was made to the street commissioner, by the contractors, as they said, for his success in collecting money on other claims. He returned it in a few hours, and said he thought it was a joke.

By the terms of the contract, the consideration was not to be paid to the contractors until the city should have collected the same from the owners of property fronting on the said streets.

The defendants were the owners of all the property abutting on First, Third, and West streets, which was divided by intersecting streets and alleys into blocks or sections. In making the assessment, the cost of the whole work on the street was ascertained, and this amount divided and apportioned to these several blocks, in proportion to the front of each, so as to make each of the said blocks liable only for its own proportion thereof. The following is a copy of the claim filed in the Court of Common Pleas:—

" This is a statement made in pursuance of the 1st, 2d, and 3d sections of an Act of Assembly of the Commonwealth of Pennsylvania, entitled ' An act defining the manner of collecting the expenses of grading and paving of the streets and alleys in Allegheny City, and for other purposes,' approved the 30th day of March 1852, for the purpose of collecting the costs and expenses, for which the property hereinafter described is liable, for the grading and paving of said First street from Cedar avenue to East lane, in the third ward of said city.

" 1st. Edward W. H. Schenley and Mary E. Schenley are the owners of the following described piece of property, situate in the third ward of the city of Allegheny aforesaid, described as follows, to wit: Beginning at the north-east corner of Cedar avenue and First street, thence east along the north side of First street 111 feet to

an alley 25 feet wide, thence north along said alley 240 feet to Second street, thence west along the south side of Second street 111 feet to Cedar avenue, thence south along Cedar avenue to place of beginning.

"This piece of property fronts and abuts 111 feet on that part of said First street graded and paved as aforesaid. The amount of the costs and expenses for which this piece of property is liable, for the grading and paving as aforesaid of said First street, is $322.26. Demand of said sum was made by Arthur Hobson, street commissioner of said city, on the said Edward W. H. Schenley and Mary E. Schenley, the 19th day of December 1856. Said amount of $322.26 is unpaid."

Then followed like statements or descriptions in respect to each block or square, as detached or severed from the others by streets and alleys, with the several assessments thereon. And to it was appended the affidavit of the street commissioner, to the truth of the facts therein set forth.

Upon this claim, ten writs of *scire facias* were issued out of the District Court, to which the defendants pleaded "never indebted, with leave, &c." On the trial, the defendants offered evidence to prove that the work was unskilfully and negligently done; that the materials used in the construction thereof, were not in accordance with the specifications, or the ordinance regulating the construction of the pavements of the city; and that the street commissioner had himself dispensed with at least one of the provisions of the ordinance, in favour of the contractors.

The defendants' counsel presented the following points, upon which they requested the court to charge the jury:—

1. That the statement, on which the *scire facias* in this case was issued, being a record of the Common Pleas, and not certified or removed into this court, in conformity with the requirements of the law, no writ of *scire facias* could issue from this court, and there is no jurisdiction here to authorize a recovery in this suit.

2. That the said statement is uncertain and defective, in not setting out the nature, quality, and amount of the work claimed to have been done, with the dates and prices thereof, so as to show how much was referable to cartways, footways, grading, and curbing, respectively; and also in the omission to state, that the work was done within six months previous to the filing of said statement: and that, for the reasons suggested, there can be no recovery thereon.

3. That the failure to record the ordinance, under the authority of which the said work is claimed to have been done, in conformity with the provisions of the charter of the city, rendered the same an absolute nullity and void; that the acts done under it were therefore without authority of law; and that the Act of February 2d 1859, to cure the defects in the said ordinance, and to affirm

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

the statements filed in pursuance thereof, so far as it may have been intended to create a liability on the part of the defendants, which did not previously exist, is unconstitutional and void.

4. That, even supposing the said act to have the effect claimed for it, the said ordinance is not now recorded in such a way as to entitle it to be read in evidence in this cause.

4½. ·That, if the street in question in this case, was not a recognised public highway of the city of Allegheny, either by dedication express or implied, on the part of the owner of the soil, or so made in the manner provided by the Acts of Assembly, there was no authority in the councils of the said city to contract for the· paving of the same, and to charge the said owners therefor, without their own consent.

·5. That, if the said street was opened for his own convenience or profit, by a tenant renting the land as an enclosed pasture-field, from, and holding under Mr. Croghan or Mr. Denny, as the executor of O'Hara, by virtue of a twenty-one year lease, expiring about the year 1851, and during the minority of Mrs. Schenley, the owner, who was, before her majority, and is yet, under the disability of marriage, and residing beyond the seas, it is no such dedication as would divest her rights in favour of the public, or render her or the property through which it passes, responsible in this suit.

6. That, supposing the said street to have been a public highway of the said city, in 1855, the councils thereof were only authorized to assess and impose a tax for the paving and grading thereof, upon the footing of a *bonâ fide* contract, made by them, or of the actual value of the work done thereon.

7. That the authorities of said city were not warranted in making a contract, payable only on the collection of the money from the lot-holders, so as to authorize them to tax the latter with the price of the credit or exemption thus secured, by the enhanced cost of the work; and that if they were so authorized, the city not being made chargeable with interest, by the terms of the said contract, the same cannot be recovered from the defendants.

8. That there is nothing in the Acts of Assembly relied on here, to authorize any assessment, except merely for the expense of grading and paving the streets, lanes, and alleys of said city, and nothing to authorize a charge either for curbstones, or for the paving of footways.

9. That, the defendants being the sole and exclusive proprietors of all the lands abutting on said street, there was no authority in the city or its agents, to subdivide the lien claimed upon said property at their own pleasure, and to issue several and distinct writs of *scire facias* upon each and every square and block thereof.

10. That, if the plaintiffs were so authorized to subdivide as

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

aforesaid, having made their election so to do, and issued their writs accordingly, the several lots or parcels of land so proceeded against, are only chargeable, respectively, for the amount of paving and grading actually done in front of them, and not upon any average estimate, which would transfer to either of them a part of the work which was done upon another; and that upon the proof of great irregularity in the grading, and the absence of any statement, except for the aggregate amount, there can be no recovery therefor.

11. That, looking to the terms of the contract, the contractors themselves, as the beneficiaries, are the substantial parties to this suit, and the case is to be dealt with on the footing of that relation.

12. That, if the jury believe that the mayor and members of councils, or any of them, were themselves parties to, or otherwise actually interested in the said contract, it will altogether avoid the same, under the provisions of the Act of Assembly of the 26th April 1855,—and there can, of course, be no recovery in this suit.

13. That, if a present or presents were made by the contractors to the street commissioner, whose duty it was to supervise and inspect the work, with a view to propitiate his favour, and the commissioner received it, it would be such a fraud on the part of the contractors as would prevent a recovery in this suit—and the fact of the return of valuables thus received, of which the knowledge had come to the possession of the public, would not remove the imputation, or be any evidence of the honesty of the officer.

14. That, if the jury believe that the work was so carelessly and fraudulently done, as to render it comparatively worthless, there can be no recovery whatever therefor.

15. That, at all events, if the work was deficient in quality; the plaintiffs would not be entitled to recover any more than the actual value thereof, without reference to the price which they agreed to pay for work done in pursuance of the ordinances.

The court below (WILLIAMS, J.), after referring to the nature of the proceeding, and the character and amount of the claims in each case (nine of the cases being submitted to the same jury), charged the jury, in substance, as follows:—

"The validity of these proceedings depends on the provisions of certain Acts of Assembly, which will be now noticed. By a supplement to the act incorporating the city of Allegheny, approved April 5th 1849 (*Pamph. Laws* 341), as modified by 3d section of the Act of 8th April 1851 (*Pamph. Laws* 371), the councils of the city of Allegheny are authorized by ordinance, to grade and regrade, pave and repair, or macadamize, any permanent street, lane, or alley, or sidewalk, within the corporate limits of said city; and to levy and collect a special tax for defraying the expenses

thereof, by an equal assessment on the feet front of the lots, section, square, or parts of a square bounding or abutting thereon. And it is expressly provided, that 'all taxes and assessments levied or made by virtue of said act, shall be a lien upon the real estate upon which they may be assessed, from the time of making such assessment, until fully paid and satisfied.' But neither of these acts contained any provision for enforcing the collection of the taxes and assessments which might be thus levied or made. This defect was remedied by the Act of March 30th 1852 (*Pamph. Laws* 204), which particularly defines and prescribes the mode and manner of collecting the costs and expenses incurred in the grading or regrading, paving or repaving, or macadamizing, any pavement, street, lane, alley, or sidewalk, or any parts thereof, within the corporate limits of said city, under the provisions of the aforesaid acts. The mode prescribed is as follows:—

"1. Demand is first to be made by the street commissioner of the owner or owners, his, her, or their agent or agents, if known to him, and resident within the county of Allegheny, of the amount of the costs and expenses to which his, her, or their property is liable, for grading, paving, repairing, or macadamizing done to any street, lane, &c., on which his, her, or their property fronts and abuts, and if not paid within ten days after the demand so made;

"2. Then it shall be lawful for the said commissioner, *at any time thereafter*, to make out a statement headed by the name of the street, lane, alley, or sidewalk, on which the costs and expenses have been, or may be incurred, in the grading, regrading, paving, repaving, repairing, or macadamizing the same, or any parts thereof; and setting forth,

"(a) The name or names of the owner or owners so delinquent.

"(b) The amount of the costs and expenses for which his, her, or their property is liable.

"(c) A description of his, her, or their property sufficient to identify it.

"(d) The ward in which it is situate.

"(e) The number of feet it fronts and abuts on the street, lane, &c., graded, paved, repaired, or macadamized, under the authority aforesaid.

"(f) And the date of the demand aforesaid on each owner.

"3. Of the truth of all which facts the said commissioner shall make affidavit, &c., which shall be annexed to, and filed with the statement aforesaid, in the office of the prothonotary of the Court of Common Pleas of said county, and the same shall be entered on record in said court, of the term to which it is filed.

"4. It is provided (§ 2), that no return of a wrong name or names as owner or owners, or misnomer in said statement, shall prevent the *scire facias*, hereafter mentioned, from issuing to the

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

real owner or owners; and no informality or defect in said statement, or misdescription of any property therein contained, shall vitiate it, but the same may be altered or amended on application to said court for that purpose.

" 5. The provision in the Act of 5th April 1849, that the costs and expenses incurred in grading, paving, &c., as aforesaid, shall be a lien on the property fronting and abutting on the street, lane, &c., on which they are or may be assessed, from the time of making such assessment, until fully paid and satisfied, is expressly re-enacted in the 3d section of the act, and it is also provided therein, that the same shall be recoverable by writ of *scire facias* in the name of the Commonwealth, for the use of the mayor, aldermen, and citizens of Allegheny, as debts secured by mortgage are now by law recoverable.

" In pursuance of the provisions of the first two recited acts, the councils of the city of Allegheny, on the 21st of June 1855, passed an ordinance providing for the grading and paving, *inter alia*, of First street from East common to East lane—requiring the street committee to invite and receive proposals for the grading and paving thereof, and to contract therefor with the lowest and best bidder or bidders at their discretion; and for the purpose of defraying the costs and expenses thereof, levying a special tax to be equally assessed on the several lots bounding and abutting on the said street; and making it the duty of the street commissioner, as soon as the cost and expense of said improvement should be fully ascertained, to assess and apportion the same among the said lots, fronting upon the said street, according to the rule above indicated, that is to say, by an equal assessment on the feet front of the lots, squares, &c., abutting on said street, as provided by the aforesaid Acts of Assembly.

" In pursuance of this ordinance, the street committee, on the 2d of July 1855, invited proposals for the grading and paving of First, among other streets, in the third ward of Allegheny, by advertising for the same in the Pittsburgh Daily Dispatch. Several proposals or bids—seven at least in number—were received by the street committee, and on the 18th of July 1855, the contract for the work was awarded, by the committee, to Palmer & Tyler, they being the lowest and best bidders. But Tyler did not, in point of fact, become a party to the contract. Gang & Co., to whom he had sold, being substituted in his place, in the written contract, signed by the parties. It seems, that contracts for the grading and paving of some other streets, for which Palmer & Tyler had also submitted proposals, were at the same time awarded to them; and Tyler, being apprehensive that he and Palmer had not sufficient capital to enable them to carry on and complete the work, procured Gang & Co. to take his place, who, upon giving the required security, were accepted by the street committee, and

allowed to become parties along with Palmer, to the contract. Palmer, Gang & Co. were, therefore, the actual contractors for the work, at the prices bidden therefor by Palmer & Tyler. Some-time during the progress of the work, Adams, one of the company, sold his interest in the contract to Grebing, who afterwards sold to McIntyre. The work of grading and paving was done by the contractors, under the direction and supervision of the street commissioner, and the street committee, who examined it from time to time as it progressed, approved of the materials used, and of the manner in which the grading and paving were done. And when the work was completed, it was examined by the street committee, approved of, and taken off of the contractors' hands. The work was completed in November 1856; and, shortly after, the costs and expenses thereof were assessed and apportioned by the street commissioner, to the lots or squares described in these cases, and to the other lots or squares fronting on the said street, by an equal assessment on the feet front thereof. Bills were then made out and furnished to the defendants, as the street commissioner has testified, showing the various items making up the amount of the assessment on each lot or square, to wit, the number of cubic yards of excavation or filling, and the costs thereof—the number of square yards of stone pavement in the cartway, and the cost thereof—the number of square yards of brick pavement in side-walk, and the cost thereof—and the number of feet (lineal measure) of curbstone, and the cost thereof—the prices according to which the cost of said items was estimated and ascertained, being the same as those mentioned in the contract, and at which the work was let to Tyler & Palmer. Two or three demands of the amount of said assessment, were made by the commissioner—the last of which, as testified by the commissioner, was made from both of the defendants, on the 19th of December 1856—and not having been paid, the statement on which the writs of *scire facias* in these cases were issued, was filed in the office of the prothonotary of the Court of Common Pleas, of this county, on the 7th of February 1857, and entered on record in said court, at March Term, 1857, No. 87. The plaintiffs claim to recover in each of these cases, the amount assessed on the respective lots or squares therein described, with interest from the demand as aforesaid.

" The defendants resist the payment of the said assessments on several grounds, which will now be considered in their order.

" 1. That this court has no jurisdiction to authorize a recovery in these proceedings, because the statement on which the writs were issued, was filed and entered of record in the Court of Common Pleas, and not having been certified or removed to this court, in conformity with the requirements of the statute, no writ of *scire facias* could be properly issued thereon out of this court. Although the act requires the statement to be filed and entered

on record in the Court of Common Pleas, it contains no·· express provision that the writs of *scire facias* shall be issued by that court. This court has jurisdiction of the amount in controversy in each of these cases. Besides, by the provisions of the 6th section of the Act of 16th June 1836, extended to the city of Allegheny by the 14th section of the Act of 13th March 1844, exclusive jurisdiction is conferred on this court for the trial of all cases where the city of Allegheny is interested, or the validity of any regulation in regard to the streets or alleys thereof is involved; and this jurisdiction is not taken away by the Act of 30th March 1852, under which the statement in these cases was filed. (Commonwealth *v.* Denny, 5 *Casey* 380.) This court having, under the provisions of the fundamental act providing for its organization, and the acts above recited, jurisdiction not only of the sums respectively demanded, but of the subject-matter of the dispute, and of the parties litigant, was authorized, as it seems to me, in the absence of any express provision that the *scire facias* should be issued by the Common Pleas, to issue the writs of *scire facias,* as was done in these cases: and for the present, I so charge the jury, reserving this question, however, for the further consideration of the court in banc, should it become necessary, by the finding of the jury on the facts upon which it will be their duty to pass.

" 2. That the statement is uncertain and defective, in the particulars mentioned in the defendants' second point, and for the reasons therein suggested, there can be no recovery thereon.

" The statement, on which the writs in these cases were issued, is in exact conformity with the requirements of the Act of 30th March 1852, and sets forth all the particulars therein specified— and I cannot, therefore, pronounce it uncertain and defective, because it does not contain something in addition to what is there prescribed or required, especially as I am not able to discover, on looking at the provisions of the act—its full, precise, and carefully defined requirements—that anything has been omitted, which the legislature deemed requisite or essential to the validity of the statement: and I, therefore, decline to charge as requested in defendants' second point; and charge that the statement, conforming, as it does, to all the requirements of the statute, is sufficient; reserving this question, also, for the further consideration of the court in banc.

" 3. That the ordinance, under which the work was done, not having been recorded, in conformity with the provisions of the charter, is null and void; and the Act of 2d of February 1859, authorizing the recording thereof, so far as it intends to create a liability on the part of the defendants, is unconstitutional and void; but even if the said act is valid, the ordinance is not recorded, in conformity with its provisions.

[Schenley *et ux. v.* The Commonwealth for the City of Allegheny.]

"Though the ordinance may have been null and void, because of the failure to record it as required by the charter, still, I think, it was competent for the legislature to pass the act in question; and the ordinance, as the evidence shows, having been recorded in conformity with its provisions, must be held and taken to be as valid and binding, as if it had been recorded at the date of its passage, or within the time prescribed by the charter. The defendants' 3d and 4th points are therefore refused.

"4. That if the street in question was not a recognised public highway of the city of Allegheny, there was no authority in the councils of said city to contract for the paving of the same, and to charge the owners therefor without their consent; and if the said street was opened in the manner suggested in defendants' 5th point, it is no such dedication as could divest Mrs. Schenley's rights, in favour of the public, or render her, or the property through which it passed, responsible in this suit. If the street in question was not a 'permanent street,' within the corporate limits of the city of Allegheny, then the councils had no power to grade and pave the same, and to levy and collect a special tax for defraying the costs and expenses thereof, by an equal assessment on the feet front of the lots, &c., bounding and abutting thereon. The proposition contained in defendants' point, numbered $4\frac{1}{2}$, is, therefore, affirmed. But I decline to charge as requested in defendants' 5th point, under the circumstances of this case. All that we know in relation to the opening of this street, from the evidence produced here, is, that it was laid out and opened as a public street, in the year 1830, and that it has been used and travelled by the public since that time, without interruption, and without objection or complaint from any quarter. When the street was opened, the land was in the occupancy of Garrard; but by whom or by what authority it was opened, has not been shown. We only know from hearsay evidence, that Garrard was a tenant of Croghan (who had a life estate in the land), under a twenty-one years' lease, when the street was opened. But the lease has not been produced, nor its provisions shown. Where a street has been laid out, opened, and used by the public, without interruption, for a period of twenty-one years and upward, the law presumes a grant of the easement; and the presumption arising in this case, is not rebutted by the fact that Mrs. Schenley was married during her infancy, and that she was under the disability of coverture when her father died in September 1850. The defendants have never attempted to close this street; and if it was opened in 1830, and has been used, without interruption, by the public since that time, as the defendants' evidence shows, then it was a permanent street, within the meaning of the act, and the councils of the city were authorized to grade and pave it.

"5. That the councils of the city of Allegheny were only autho-

[Schenley *et ux. v.* The Commonwealth for the City of Allegheny.]

rized to assess and impose a tax, for the grading and paving of said street, upon the footing of a *bonâ fide* contract made by them, or of the actual value of the work done thereon. This proposition (defendants' 6th point) is affirmed.

" 6. That the authorities of said city were not warranted in making a contract, payable only on the collection of the money from the lot-holders, so as to authorize them to tax the latter with the price of the credit or exemption thus secured, in the enhanced cost of the work; and if they were so authorized, the city not being made chargeable with interest, by the terms of the contract, the same cannot be recovered from the defendants. (7th point.)

" I see nothing in the terms of the contract which would warrant the court in declaring it void, for want of authority in the councils to make it—and nothing which will prevent the city from recovering interest on the assessment, from the date of the demand. This point is therefore declined.

" 7. That the Acts of Assembly do not authorize an assessment to defray the expenses of the curbstones, and for the paving of footways.

" The law not only authorizes the grading and paving of streets, lanes, and alleys, within the limits of the city of Allegheny (which, as I think, comprehends the whole and every part of the said streets, lanes, and alleys, including footways as well as cartways, and the use of the necessary and proper materials therefor) but it expressly specifies sidewalks; and I know of no reason, why the cost of curbstones is not as legitimate a charge as the cost of paving-stones and brick. There is no evidence to show that they are not as necessary; and we know as a matter of fact, that they are used in all the well-paved streets in Pittsburgh and Allegheny. The defendants' 8th point is therefore refused.

" 8. That, the defendants being the sole and exclusive owners of all the lands abutting on the said street, the city was not authorized to subdivide the lien claimed upon the property, at their own pleasure, and to issue several and distinct writs of *scire facias* upon each and every square and block thereof.

" The defendants are, it would seem, the owners of all the property situate on both sides of First street. This property is cut up into blocks, sections, or squares, by streets running parallel with First street, and by other streets and alleys intersecting these streets. The property on First street is thus divided into ten or more separate sections or squares. Instead of assessing the whole cost and expense of grading and paving this street upon all the blocks or squares jointly, as if they were one block or square, the expense of grading and paving was apportioned among the several blocks or squares, by an equal assessment on the feet front thereof, and each separate and distinct block or square

was assessed with its *pro rata* proportion of the expense of the grading and paving. I see no objection to this method of making the assessment. On the contrary, it seems to me that the defendants have less reason to complain than they would, if the whole expense of grading and paving had been jointly assessed on all the blocks and squares, as if they were one, separate and distinct. In that case, no block or square would have been discharged from the lien, until the whole amount of the expense of grading and paving was paid.

"9. That the several lots or parcels of land embraced in these proceedings, are chargeable respectively for the amount of paving and grading actually done in front of them, and not upon an average estimate which would transfer to either of them, a part of the expense of the work which was done in front of another.

"The act provides, that a specified tax for defraying the costs and expenses of grading and paving any street, shall be levied and collected by an equal assessment on the feet front of the lots, sections, squares, or parts of a square bounding and abutting thereon, as was done according to the testimony of the street commissioner, in this case. The act does not contemplate that, where more excavation or filling is done in front of one lot than another, an allowance shall be made therefor in making the assessment; but the whole cost and expenses of grading and paving a street, are to be defrayed by *an equal assessment* on the feet front of the property abutting thereon. The defendants' 10th point is refused.

"10. That the contractors are the substantial parties to these proceedings, and if the mayor and any members of councils were themselves parties to, or otherwise actually interested in the said contract, it will altogether avoid the same under the provisions of the Act of 26th April 1855.

"And if a present was made by the contractors to the street commissioner, whose duty it was to supervise and inspect the work, with a view to propitiate his favour, and the same was received, it would be such a fraud as would prevent a recovery in these suits; and the return of the valuables would not remove the imputation, or be any evidence of the honesty of the officer.

"I have thus grouped the propositions contained in defendants' 11th, 12th, and 13th points, for the purpose of answering them together. The matters here suggested might, if found to be true, possibly avoid the contract, and prevent a recovery thereon by the contractors in an action against the city. But the contractors are not actual parties to these proceedings, and 'looking to the terms of the contract,' I am not prepared to say that they are the substantial parties therein. Besides, the defendants are in no sense parties to the contract, and the proceeding in these cases is not upon the contract, but under the statute. The claims sought to be enforced against the defendants' property, do not arise out of

[Schenley *et ux. v.* The Commonwealth for the City of Allegheny.]

the contract, but are founded on the assessment or levy authorized by the statute. If the assessment was justly and fairly made, it is a lien on the defendants' property, and its payment may be enforced. If the work of grading and paving this street was let by the street committee in good faith to the lowest and best bidders (and there is no evidence that the street committee were offered presents, or received bribes, or that Palmer & Tyler, to whom the work was let, were members of councils) if the work was done in accordance with the terms of the contract, if it was well done, and if the parties who did the work were guilty of no actual fraud in its execution, and if the street committee were not guilty of any fraud or collusion in taking it off of the contractors' hands, the mere fact that the mayor and one or two members of councils may have been parties to, or otherwise actually interested in the contract, or that a present of a watch was made to the street commissioner, which was almost immediately returned, will not prevent a recovery in these cases. These points will be further noticed, when the court comes to call the attention of the jury to the facts upon which it will be their duty to pass; but the court decline to charge as requested in defendants' 11th, 12th, and 13th points, reserving the questions for the further consideration of the court, in connection with those already reserved.

"11. That if the work was so carelessly and fraudulently done as to render it comparatively worthless, there can be no recovery whatever therefor. This proposition is affirmed.

"12. That if the work was deficient in quality, the plaintiffs would not be entitled to recover any more than the actual value thereof, without reference to the price which they agreed to pay for work done in pursuance of the ordinance.

"If there was no fraud or collusion on the part of the street committee and the contractors; if the street committee, in good faith, let the work to the lowest and best bidders, and if the contractors, in good faith, performed the work; if the street committee and the street commissioner, from time to time, examined the work as it progressed, and in good faith, and in the exercise. of their best judgment, approved of the materials, and the manner in which they were laid; and when the work was finally completed, took it off of the hands of the contractors, because they honestly believed that it was done substantially, in accordance with the terms of the contract, and the city ordinance regulating the same; the fact that some of the curbstones have proved defective in quality, and have not stood the weather as well as it was supposed they would, will not prevent the plaintiffs from recovering the amount of the assessments made, with reference to the price agreed to be paid for the work, notwithstanding it may, in the opinion of some one or more witnesses, exceed the actual value of the work. And so in regard to the pavement of the sidewalks: the fact that

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

the pavement was laid on a foundation of cinders and sand (the cinders being first put down to the depth of three or four inches, and then sand to the depth of two inches, as testified, instead of being laid on four inches of sand) will not prevent the plaintiffs from recovering the amount of the assessments, if the jury find that the pavement was thus laid with the approbation and authority of the street committee, acting in good faith, and in the exercise of their best judgment, because they had found by experience, as testified in this case, that pavements so laid, stood the weather better than when laid wholly on sand; and because that is and was, at the date of the making of the said contract, the customary way of laying such pavements, in the city of Allegheny. It was the duty of the street committee and the street commissioner, to inspect the materials, and determine their quality before they were used; and to pass upon the whole work when finished: if they did this in good faith, and in the exercise of their best judgment, after consulting those skilled and having experience in such matters, the fact that some of the stone have not stood the weather as well as it was supposed they would, constitutes no defence to this action.    But, if any of the defects complained of were occasioned by the fraud or gross carelessness of the committee and the contractors, that would constitute a good defence to the plaintiffs' claim in these cases.    I have now answered all the points submitted by defendants' counsel in these cases, and it only remains for the jury to apply the law, as laid down by the court, in the facts as they shall find them.    Our instructions to the jury, on the questions of law raised by the defendants' points, may be summed up briefly as follows:—

" This court has jurisdiction of the proceedings in these cases, and they have been properly brought before us; the statement containing all that the act requires, is sufficient; the ordinance, under which the work was done, having been recorded, in conformity with the provisions of the Act of 2d February 1859, is valid; the street in question, having been laid out, opened, and used by the public without interruption, and without objection on the part of the defendants, or any one else, so far as the evidence shows, for a period of more than twenty-one years, must be a *permanent street*, within the meaning of the acts authorizing the councils of the city of Allegheny to grade and pave any of the permanent streets, &c., within the limits of said city, without reference to the supposed disability of the defendant's wife, arising from infancy and coverture, to make or consent to a dedication thereof to the use of the public.    The councils of the city of Allegheny were only authorized to assess and impose a tax for the grading and paving of said street, on the footing of a *bonâ fide* contract made by them, or of the actual value of the work done thereon; there is nothing in the terms of the contract

under which the work was done, rendering it void for want of authority in the councils to make it, nor to prevent the plaintiffs from recovering interest on the assessments from the date of the demand; the law authorizes an assessment to defray the expense of curbstones, as well as other necessary materials used in paving a street, and for the paving of footways or sidewalks, and creates a lien therefor; the whole cost of grading and paving the street in question, might properly be apportioned among the several blocks or squares fronting thereon, so as to assess upon each separate block or square, by an equal assessment on the feet front, its *pro rata* share or proportion thereof; and for each of said assessments thus made, distinct writs of *scire facias* might properly be issued, as was done in these cases; the act does not contemplate that where more grading or filling is done in front of one lot or square, than there is in front of another on the same street, that allowance should be made therefor in making the assessment; but the whole cost and expenses of grading and paving a street, are to be defrayed by an equal assessment on the feet front of the property abutting thereon; the proceedings in these cases are in the name of the Commonwealth, for the use of the mayor, aldermen, and citizens of Allegheny, and there is no evidence, *outside* of the contract, that any other parties are interested therein; and 'looking to the terms of the contract,' there is no evidence that the contractors are the substantial parties to these proceedings; these proceedings are not upon the contract, but under the statute, and the lien sought to be enforced against the defendants' real estate, does not arise out of the contract, but has its origin and foundation in the assessment made under and by virtue of the statute. If the assessment was justly and fairly made, it is a lien on the defendants' property, and its payment may be enforced. If the contract for this work was awarded, in good faith, to the lowest and best bidders; if the work was executed substantially in accordance with the terms of the contract, and the provisions of the ordinance; if it was well done, and the materials used were of a good quality; if there was no actual fraud, either in the making or in the execution of the contract; and if the street committee were guilty of no fraud or collusion, in taking the work off of the contractors' hands, then the mere fact that the mayor and one or two members of councils may have been parties to, or otherwise actually interested in, the contract; or that a present of a gold watch was made to the street commissioners, which was not retained, but almost immediately returned by him, will not prevent a recovery in these cases.

"But, if the work was not let to the contractors in good faith; if there was fraud and collusion between them and the officers of the city having supervision of the work; if, by the connivance of the street commissioner and the street committee, the contrac-

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

tors used improper and defective materials; or failed in other respects to do the work in accordance with their contract, and the requirements of the ordinance, so as to render it, as alleged, comparatively worthless, there can be no recovery in this case, and there ought to be none. The city ought, in such case, to suffer the consequences of the fraud of its own officers and agents. But if there was no fraud or collusion on the part of the street committee and the contractors; if the work was let in good faith, and if it was performed in good faith; if it was examined from time to time as it progressed; and if the materials, before being used, were inspected and approved by the street committee and the street commissioner, and the manner in which they were afterwards laid was also approved by them; and if, when the work was finished, it was accepted and taken off the contractors' hands by the street committee, acting in good faith, and in the exercise of their best judgment, because they believed it to be done substantially in accordance with the terms of the contract and the requirements of the ordinance, the fact that some of the curbstones have not stood the weather as well as others, or, as well as it was supposed they would; or, that the pavement of the sidewalks was laid on a foundation composed partly of cinders, and partly of sand, instead of one composed wholly of sand, will not prevent the plaintiffs from recovering the amount of the assessments in these cases, if the jury believe that the foundation used was better than one composed wholly of sand, or equally as good, and that when this contract was made and executed, it was customary to lay the pavements and sidewalks in the city of Allegheny on such a foundation, and that it was so done in this case, with the sanction and authority of the street committee, because, as testified, they had found by experience, that pavements laid in this way, stood the weather better than when laid on four inches of sand only. The street commissioner and the street committee were the proper judges of the materials and the work, and their judgment is final and conclusive, unless it can be impeached for fraud, collusion, or gross negligence. If they acted in good faith, in letting the work to the lowest and best bidders, and exercised their best judgment in inspecting and approving of the materials, and the manner in which the work was done, it is no defence that the water and frosts of three winters have shown that some of the curbstones were defective in quality. The jury will then determine,—1st. Whether the work was done substantially in accordance with the terms of the contract, and the requirements of the ordinance? 2d. If there was any defect in the quality of the materials used, or in the manner of doing the work— whether it was owing to the fraud, collusion, or gross negligence of the contractors, and the officers of the city having the supervision and control of the work?

"If the work was done substantially in accordance with the terms of the contract and the ordinance, there could have been no fraud or collusion on the part either of those who did, or of those who superintended the work; for the defendants' own evidence shows that the prices agreed to be paid therefor were fair and reasonable, if the work had been well done, and the usual and customary prices for doing such work. There seems to have been a defect in the quality of some of the curbstones, not in all of them, though they came from the same quarry, but only in a portion of them. Was this such a defect as could be discovered or known beforehand by the exercise of ordinary skill and care? Ought the contractors or the officers of the city to have known, or did they know that these stones would not stand the weather? Or was the defect such that it could only be known and ascertained after the stone had been tried, by being subjected to the action of the frost and water? If so, and if the assessment in these cases was made in accordance with the rule indicated by the court, and as testified to by the street commissioner; and if the bills were made out and rendered to the defendants, exhibiting the amount of the assessments in each of these cases, and the several items composing the same; and if the amount thereof was demanded of the defendants at the date mentioned in the statements, then the plaintiffs are entitled to recover the said assessment, with interest from the demand.

"The jury ought to scrutinize the evidence bearing on the question of the alleged fraud with great care, inasmuch as the charge is made in connexion with the fact that the mayor and some members of councils, perhaps two members, were interested in, and parties to the contract under which the work was done; and if there was any fraud, the jury should not hesitate to declare it by their verdict. But if there was no fraud, the jury ought not to find that there was fraud; and there ought to be some other evidence of it besides the mere fact that the mayor and one or two members of councils were parties to, or otherwise interested in the contract. The jury will determine what the facts are, and find their verdict in these cases in accordance with the instructions of the court. If the jury find for the plaintiffs, they will find separate verdicts in each case, subject to the opinion of the court upon the questions of law reserved."

To this charge the defendants excepted. There was a verdict for the plaintiff for $370, subject to the opinion of the court upon the points reserved. The court reserved the following questions of law for the consideration of the court in banc:—

1. Were the writs of *scire facias* properly issued in these cases, and has this court jurisdiction to authorize a recovery thereon? it appearing that the statement upon which the said writs of *scire*

*facias* were issued, was filed and entered of record in the Court of Common Pleas of the county, in conformity with the requirements of the Act of 30th March 1852, and that the same has not been certified or removed into this court.

2. Is the said statement uncertain and defective in not setting out the nature, quality, and amount of the work claimed to have been done, with the dates and prices thereof, so as to show how much was referable to cartways, footways, grading, and curbing respectively, and also in the omission to state that the work was done within six months previous to the filing of said statement, or is the said statement sufficient in law to authorize a recovery thereon?

3. Looking to the terms of the contract under which the work was done, are the contractors the substantial parties to these proceedings; and if so, will the fact that the mayor and one or more of the members of the councils of the city of Allegheny were parties to, or otherwise were actually interested in the contract, altogether avoid the same under the provisions of the Act of the 26th of April 1855, and prevent a recovery in these cases; or will the fact that a gold watch was presented by the contractors, or some of them, to the street commissioner, which was not retained by the commissioner, but returned within an hour or two thereafter, be such a fraud on the part of the contractors as will prevent a recovery in these cases? if the jury find that the contract for the grading and paving of this street was awarded by the street committee in good faith to the lowest and best bidder; and that the work was done in accordance with the terms of the contract, and that it was well done; and that the parties who did the work were guilty of no actual fraud in its execution; and that the street committee were not guilty of any fraud or collusion in accepting the work and taking it off the contractors' hands, when the same was finished; and that the assessment was fairly and justly made.

The points reserved having been argued by counsel before the court in banc, the following opinion thereon was delivered by WILLIAMS, J. :—

"Were the writs of *scire facias* properly issued in these cases, and has the court jurisdiction to authorize a recovery thereon?

"That this court has jurisdiction of the sums in controversy, of the subject-matter of the dispute, and of the parties litigant here, cannot be questioned or denied. These cases do not come within that class of which the court has no jurisdiction whatever, and of the want of which, advantage may be taken, in any stage of the proceedings. The court has jurisdiction of these cases, if they have been regularly and properly brought before it. The objection, then, is not so much to the jurisdiction of the court, as to the

regularity of its process. And if the defendants intended to raise this question—if they objected to the writs on the ground that they were irregularly issued—ought they not to have made the objection at the outset, by a motion to quash the writs for the alleged irregularity, and does not the objection come too late after appearance and plea? *By accepting service of the writs, and pleading thereto without objection,* have not the defendants waived the irregularity, if it be such, of their issue?.

"But were the writs irregularly and improperly issued by this court? There is no provision in the act which forbids this court to issue the *scire facias,* or which makes it the duty of the Common Pleas to issue it. It is true, that the statement on which the writs issued was filed and entered of record in the Common Pleas; but the act might have provided that it should be filed and entered of record in the recorder's office; and if it had, this question would probably not have been raised. The jurisdiction of this court, and the regularity of its process in such case, would not have been questioned. But if the act, under which the statement was filed, does not forbid the issue of the *scire facias* by this court, is there anything in the nature of the proceeding—in the remedy provided by the act—which makes it improper for this court to issue the writ?

"The act provides that the costs and expenses of grading and paving any of the streets within the corporate limits of the city shall be a lien on the property fronting and abutting thereon, and that 'the same shall be recoverable by writ of *scire facias* in the name of the Commonwealth for use, &c., as debts secured by mortgage are now by law recoverable.' The object of the *scire facias* is to warn or give notice to the owners they may appear and show, if they have any defence, why their property should not be taken in execution and sold to satisfy the assessment or lien. This object may be as well accomplished by the writ being issued by this court, as by the Common Pleas, and there is nothing in the nature of the proceeding, or in the remedy provided, which makes it improper for this court to issue the writ. This court has the same jurisdiction and authority to issue a writ of *scire facias,* in a proper case, as it has to issue any other writ; and in a case where the court has jurisdiction of the sum in controversy, of the subject-matter of the dispute, and of the parties litigant, and exclusive jurisdiction for the trial thereof, why should it be deemed essential to the proper and just exercise of that jurisdiction that the Court of Common Pleas should issue the writ of *scire facias* to warn the defendants to appear in that court to show, if anything they know or have to say, why, &c., and after their appearance there, should then certify or transmit the cause to this court for trial—thus making the Common Pleas the only door of entrance to this court for the parties in cases like these? There might

perhaps be some propriety in this, if the jurisdiction of this court was derived from, or conferred by, the certificate of the president judge of the Common Pleas; but it is not. The jurisdiction of this court is given by statute, and the certificate of the president judge of the Common Pleas, even in cases actually pending in that court, and coming within the provisions of the act authorizing such certificate, is only *evidence* of the jurisdiction of this court therein. But these cases were never pending in that court; and it is only in cases actually pending there that the certificate of the president judge is made evidence of our jurisdiction. Here we have the same evidence of our jurisdiction, that we have in other cases, originally brought in this court, viz., the statute by which the jurisdiction is conferred. For these reasons, in addition to those given in the charge, I am of the opinion, that the writs of *scire facias* in these cases were properly issued; and that if they were irregularly issued, the defendants, by accepting service thereof and pleading thereto without objection, have waived the irregularity. After a full and fair trial upon the merits, I am not disposed to turn the plaintiffs out of court upon an objection so purely technical, and compel them to come into this court through the Common Pleas.

"2. Is the statement uncertain and defective in not setting out the nature, quality, and amount of the work claimed to have been done, &c., or is it sufficient in law to authorize a recovery thereon?

"The provisions of the Act of the 16th April 1840, under which the claim in the case of The City of Philadelphia *v.* Sutter, 6 *Casey* 53, cited by defendants' counsel, was filed, are altogether unlike the provisions of the Act of 30th March 1852, under which the statement in these cases was filed. The Act of 1840 is general in its provisions; it does not specifically direct what the claim filed shall set forth. It assimilates the proceedings thereon to those upon a claim under the Mechanics' Lien Law. The lien of the charge or assessment, for work done under its provisions, is subject to the limitation of the Act of 16th April 1845, which provides that it shall not continue longer than six months from the time the work is done, unless a claim therefor is filed within that time, nor longer than five years from the time of the filing of the claim, unless revived by *scire facias*, in the manner provided by law in the case of mechanics' claims. But no demand is required to be made of the owner before filing the claim.

"The Act of 1852 is particular and explicit in its provisions. It specifically enumerates and declares what the statement shall set forth; and it assimilates the proceedings thereon to proceedings by *scire facias* on a mortgage. The lien of the tax or assessment, for work done under the provisions of the act of which it is a supplement, is not subject to the limitation of the Act of the

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

16th of April 1845, but, like the lien of a mortgage, no limits are imposed on its duration. It does not require the statement to be filed within six months after the work is done, in order to preserve the lien, nor that it shall be revived within five years thereafter; but it does require that a demand shall be made of the owner, if known and resident within the county, of the amount of costs and expenses to which his property is liable for grading and paying, before a statement can be filed; and if not paid within ten days after such demand, then it provides that a statement may be made and filed *at any time thereafter.*

"But it is said, that the Act of 16th April 1845 is general in its provisions, and therefore the lien of the tax or assessment to defray the costs and expenses of the grading and paving in these cases is subject to its limitation. And so, undoubtedly, it would be, if the provisions of the act creating the lien, and of the act providing a mode for enforcing its collection, were not inconsistent and irreconcilable with the provisions of that act. The Acts of 1849 and 1851, under which the assessments in these cases become a lien, made no provision for its being made a matter of record, and imposed no limits upon its duration. On the contrary, it is expressly provided, that the assessments shall be a lien upon the real estate, upon which they may be assessed, from the time of making such assessments until they shall be fully paid and satisfied. And the Act of 1852, which provides a mode for enforcing the collection of the assessments made under the former acts, to defray the costs and expenses incurred in grading and paving, expressly declares, that they shall be and remain a lien on the property from the time mentioned in the second section of the Act of 1849, until fully paid and satisfied; thus re-enacting the provisions of that act with respect to the duration of the lien, for the express purpose, as it would seem, of repelling the inference that might possibly otherwise arise, that by providing the remedy therein it was intended to make the lien subject to the limitation of the Act of 1845. To hold, therefore, that the lien arising under the Acts of 1849 and 1852 is subject to the limitation of the Act of 1845, when the legislature have expressly declared in both the former acts, that the lien shall remain until fully paid and satisfied, would be not to interpret but to repeal the law as made by the legislature, and that, too, in a case where the legislative mind is fully and clearly expressed.

"These paving acts were not intended, and cannot be interpreted, to constitute a uniform and harmonious system or body of laws. To be convinced of this, it is only necessary to compare the provisions of the Acts of 1840, 1845, 1849, and 1852, and those passed at the last session of the legislature (to be found on pp. 149, 158, 272, 505, and 708 of *Pamphlet Laws* for 1859),

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

with each other, and it will appear that in many essential particulars their provisions are altogether incongruous and repugnant.

"For the reasons here given, and those contained in the charge, I am of opinion that the statement is sufficient in law to authorize a recovery thereon.

"3. Are the contractors the substantial parties to these proceedings? and, if so, will the fact that the mayor and one or more members of the councils of the city of Allegheny were parties to the contract, avoid the same, and prevent a recovery in these cases, &c. ?

"The question of the alleged fraud and collusion has been settled by the verdict. The jury have found (and under the evidence they could not have consistently found otherwise) that the work of grading and paving the street was let by the street commissioner in good faith to the lowest and best bidders; that the work was done in accordance with the terms of the contract, and that it was well done; that the parties who did the work were guilty of no fraud in its execution; and that the street committee were not guilty of any fraud or collusion in approving the work and taking it off the contractors' hands; and that the assessment to defray the costs and expenses thereof was justly and fairly made.

"By the contract, the city undertook and became liable to pay the contractors the prices therein stipulated for the work. The provision that a portion of the contract price 'is not to be paid until the city shall have collected the same from the owners of property fronting and abutting on said street,' was not intended to relieve the city from its engagement to pay for the whole of said work, or to discharge its liability in this respect, by substituting therefor the liability of the property, under the lien imposed by the act, for the costs and expenses of the said work, and compelling the contractors to look to the said property or the owners thereof for payment; but it was intended to define and fix the time when the payment was to be made, and was introduced for the benefit of the city and in relief of its treasury. Notwithstanding this provision, the obligation to pay still rests on the city, and the remedy of the contractors to enforce the payment is against the city alone. The contractors by this provision did not agree to incur any expense in enforcing the payment of these liens, and there is not a tittle of evidence that the proceedings are carried on at their instance. They may have some interest in the question, for the sooner the payment of these liens can be enforced, the sooner will the debt, which the city owes them, become due. But this cannot make them substantial parties to these proceedings. They are not liable for costs, as they would be, if they were substantial parties here.

"In regard to the charge of an attempt by the contractors to

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

bribe the street commissioner, by a present of a gold watch, with which to blind his eyes as to the character of their work, the evidence showed two things—

" 1st. That the watch was not presented for any such purpose, or with any such view; but that, on the contrary, the motive for making the present was the fact that the street commissioner had been very successful in making collections of assessments for work done by these contractors on another street, running through defendants' property, and which they paid without objection; and that he had promptly paid the same to the contractors, or for their use, to take up the notes which they had given, and which were maturing; and that the watch was given as a sort of gratuity or reward for those services :—

" 2d. That, as soon as the commissioner came to reflect on the official relation which he sustained to the contractors, he had the good sense to refuse to keep the watch, and handed it back to the donors shortly after it was given. The evidence was scarcely sufficient, in my opinion, ' even to give color' to the charge that was made.

" The reserved question is then narrowed down to this : Will the mere fact that the mayor and one or more members of the council of Allegheny were parties or otherwise interested in the contract under which the work was done, prevent a recovery in these cases ?

" Now, what have the defendants to do with the contractors ? What difference is it to them whether the mayor and one or two members of the councils of Allegheny were parties to or otherwise interested in the contract, if the work was let in good faith to the lowest and best bidder ; and if it was done in accordance with the terms of the contract, and well done ; and if the assessment therefor was justly and fairly made ? It does concern the defendants that the work should be well executed, and at fair and reasonable prices, and that the assessment to defray the cost thereof should be fairly and justly made. But it is no concern to them who the contractors were, or by whom the work was done. Why, then, when the work has been well done, and at fair and reasonable prices, without any fraud or collusion, and when the assessments therefor have been justly and properly made (as the evidence most clearly shows, and as the jury have found) should the defendants be allowed to reap the benefits of the improvement without bearing the burden which the law justly imposes therefor, while the property of others, similarly situated, is subject to a like burthen for improvements made for the common benefit ? Satisfied as I am with the finding of the jury, and believing that these defendants have no real cause of complaint on the ground of fraud or oppression, I am not disposed to hold, that the lien in these cases arising out of assessments which are found to have been fairly and

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

justly made, is invalid and incapable of being enforced, simply because the mayor and one or more of the councils of the city were parties to the contract under which the work was done. It would be setting up a technical point of the sharpest kind, on which to sacrifice the justice of the case. For these reasons, and for those heretofore given on the trial, I am of the opinion that the plaintiffs are entitled to judgment on the verdict in each of the cases."

To this opinion the defendants excepted; and judgment having, accordingly, been entered on the verdict, they removed the case to this court, and here assigned for error (*inter alia*): 1. The charge to the jury: 2. The entry of judgment for the plaintiff, on the points reserved.

*Williams & Sproul*, for the plaintiffs in error, cited 1 *Greenl. Ev.*, § 450; Commonwealth *v.* Denny, 5 *Casey* 380; City of Philadelphia *v.* Sutter, 6 *Id.* 53; Northern Liberties *v.* St. John's Church, 1 *Harris* 107; Barclay *v.* Weaver, 1 *Whart. Dig.* 286, pl. 107; Greenough *v.* Greenough, 1 *Jones* 495; Menges *v.* Dentler, 9 *Casey* 495; Steubenville Railroad Co. *v.* Gazzam, 8 *Id.* 350; Dale *v.* Medcalf, 9 *Barr* 108; Bolton *v.* Johns, 5 *Id.* 145; Wood *v.* Veal, 5 *B. & Ald.* 454; 1 *D. & R.* 20; Baxter *v.* Taylor, 1 *M. & N.* 13; Rex *v.* Edton, 1 *M. & Rob.* 24; Towanda Bank *v.* Ballard, 7 *W. & S.* 435; Columbia Bridge Co. *v.* Haldeman, *Id.* 233; *Parsons on Contracts* 380; Toler *v.* Armstrong, 4 *W. C. C. R.* 299; Columbia Bridge Co. *v.* Kline, 6 *Penn. L. J.* 317; Mitchell *v.* Smith, 1 *Binn.* 118; Maybin *v.* Coulon, 4 *Dall.* 298; Biddis *v.* James, 6 *Binn.* 321; Seidenbender *v.* Charles, 4 *S. & R.* 159.

*Hamilton* and *D. W. Bell*, for the defendant in error, cited Silver *v.* Schuylkill County, 8 *Casey* 356; Biddle *v.* Starr, 9 *Barr* 467; Hepburn *v.* Curts, 7 *Watts* 301; Bleakney *v.* Farmers' and Mechanics' Bank of Greencastle, 17 *S. & R.* 64; Chaffee *v.* Michaels, 7 *Casey* 282; Underwood *v.* Lilly, 10 *S. & R.* 101; Tate *v.* Stooltzfoos, 16 *Id.* 37.

The opinion of the court was delivered by

STRONG, J.—This was a *scire facias* to recover the amount of a municipal claim, made by the city of Allegheny against a lot in said city, belonging to Mrs. Schenley, one of the defendants. The claim was for the costs and expenses of grading First street. It was filed originally in the Court of Common Pleas, and it is now argued that the District Court had no authority to issue a *scire facias* founded thereon. The Acts of Assembly of June 16th 1836, *Pamph. L.* 745, §§ 6 and 7, and March 13th 1844, *Pamph. L.*

102, § 14, require that all indictments and civil actions in which the city of Pittsburgh or of Allegheny may be directly or indirectly interested, shall be tried in the District Court, before a jury from which all persons resident or owning property in said city shall be excluded. The acts further provide, that the certificate of the Mayor's Court of the city of Pittsburgh, or of the president judge of the fifth judicial district, composed of the county of Allegheny, that the indictment or civil cause proposed to be removed is, in his opinion, within the meaning of the first (seventh) section of the act, shall be conclusive evidence of the jurisdiction of the District Court in such case, and that thereupon the indictment, and all papers connected therewith, if it be a criminal case, or the original writ, declaration, and all papers connected therewith, if it be a civil case, shall be transmitted to said District Court. It is clear, that exclusive authority to try the class of cases described in these acts is conferred upon the District Court. But it is said, that before the jurisdiction can attach, there must be a certificate from the president judge of the Common Pleas. To this it might be answered, that even if such a certificate were necessary to bring the case into that court, it would not be for the defendants to object to its absence, after having appeared, pleaded, and gone on to trial. It is not to be denied, that when the case is in that court, it has authority to try. The objection, therefore, is not to the judicial power of the court, but to the mode in which the case is brought before it. If available at any stage of the proceeding, it must have been taken before general appearance and plea in bar.

There was not, however, even an irregularity in the form of proceeding. The District Court has general authority to issue writs of *scire facias.* The amount of the claim in this case, and the subject-matter, were completely within its jurisdiction. Even without the Acts of 1836 and 1844, there could, therefore, have been no other obstacle in the way of its writ of *scire facias*, than the fact that the claim had been filed in another court. It is true, that such a writ is, in England, judicial, in most cases; and hence it follows, that it must issue out of the court in which the record is, upon which it is founded. But with us, it is often an original, not even resting upon a record. It is often substantially an action of debt, and it cannot, therefore, be fatal to it, that its foundation lies in another court. Thus, a *scire facias* may be maintained in the Common Pleas upon a recognisance in the Orphans' Court. Municipal claims and mechanics' claims are not strictly records. Acts of Assembly have authorized writs of *scire facias* to recover them, but there is nothing in their nature to confine jurisdiction over them to the court among whose records they may be filed. The Acts of 1836 and 1844, however, confer upon the District Court plenary and exclusive jurisdiction over municipal claims of

the city of Allegheny. In that court they must be tried. Surely, an act which declares that certain cases shall be tried in a designated court, empowers that court to do all which is necessary to try them. To the exercise of this power, authority to bring the litigant parties before it is essential. Nor do the acts confer jurisdiction over such cases only as may be certified. No provision is made for certifying any other than *pending* cases. The District Court is authorized to try all cases. It does not derive its jurisdiction from the certificate, but from the statutes. But if the certificate applies only to cases pending in the Common Pleas, how can its absence amount to prohibition of a *scire facias* upon a claim, in regard to which there is no case pending? We cannot think the legislature intended the idle form of a *scire facias* first in the Common Pleas, and then a certificate to the District Court, a form, the only effects of which would have been, to complicate the proceedings, and multiply costs to the parties.

It is next contended, that the statement of the claim filed is uncertain and defective, in not setting out the nature, quality, and amount of the work claimed to have been done, with the dates and prices thereof, so as to show how much was referable to cartways, footways, grading, and curbing respectively, and also in the omission to state that the work was done within six months previous to the filing of said statement. It is assigned for error that the court refused thus to instruct the jury.

The statement was made out and filed under the provisions of the Act of March 30th 1852, *Pamph. L.* 204, and it was in strict accordance with the requirements of that statute. That statute is not an indefinite enactment, authorizing a statement to be filed, without prescribing what it shall contain. On the contrary, it points out distinctly what matters the claimant shall set forth. When he has averred those matters, he has laid the required statutory foundation for a writ of *scire facias*. We held, indeed, in Philadelphia *v.* Sutter, 6 *Casey* 53, that a claim filed under a different Act of Assembly, that of April 16th 1840, was insufficient, because it did not set forth the time when the paving was done, nor the kind of paving nor the place where it was done. But that act assimilated the claims filed under it, to those of a mechanic or material-man. The Act of 1852 likens claims which it authorizes to that of a mortgagee. The Act of 1840 did not prescribe what the claim filed under it should be. It only required that certain things should be stated *in it*. The Act of 1852 does prescribe what the form of the statement shall be, and specifically enumerates the averments which it must contain. It also requires a demand of the owner of the lot against which the claim is made, before any statement can be filed, as well as an affidavit of all the facts therein set forth. It allows the claim to be filed at any time after demand made, and it enacts that the claim shall

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

remain a lien until paid. There is very little resemblance between such a claim and that of a mechanic, and, consequently, the construction we gave to the Act of April 16th 1840, is inapplicable to the statute under which the statement in this case was filed.

It is said, however, that the statement is defective, because it does not contain an averment that the work was done within six months previous to its entry in the Common Pleas; and in support of this objection we are referred to the Act of April 16th 1845: *Pamph. L.* 488. This would be so, if the Act of 1845 had any application to this case. But it has not. This claim is based upon the Acts of April 5th 1849, *Pamph. L.* 341, and April 8th 1851, *Pamph. L.* 372, which made the costs and expenses of grading, paving, &c., streets, a lien upon the real estate adjoining. They declared that the costs and expenses should remain a lien until they were fully paid and satisfied. They made, however, no provision for enforcing payment, or even for making the liens matters of record. To remedy these defects, the Act of 1852 was passed. That enacted that a statement of the claim might be filed, not within six months from the time the work was done, but *at any time* after a demand should be made of the lot-owner; and it also reiterated the declaration that the assessment should remain a lien until fully paid and satisfied. These acts are utterly irreconcilable with that of 1845, and the conclusion is, therefore, a necessary one, that such municipal claims as the present are not within its provisions. If the statement may be made at any time after demand made for its payment, and if the lien be of indefinite duration, it cannot be requisite to aver that the work was done within six months next previous to its being filed. It was well said by the learned judge of the District Court who tried this cause, that the paving acts of different cities cannot be interpreted to constitute an uniform and harmonious system of laws. Nor were they intended to be such. -

The fourth and fifth assignments of error relate to the validity of the city ordinance under which the paving was done. That was passed on the 25th day of June 1855, but was not recorded as required by law until the 9th of February 1859. The act incorporating the city of Allegheny declares that such ordinances as shall not be published within fifteen days after their passage in one or more of the public newspapers, published in said city, or in such other way as the select and common councils might direct, and recorded within thirty days in the office of the recorder of deeds for the county of Allegheny, shall be null and void. But on the 2d of February 1859, another Act of Assembly was passed, which, after referring to the ordinance of June 25th 1855, and to the fact that large sums of money had been expended in grading and paving under it, enacted that the omission or failure to record it shall not impair or in any manner affect contracts made in pursu-

ance of it, or any assessment, tax, lien, or claim for the costs of grading and paving done in pursuance of, and in accordance with, its provisions.   The act also empowered the city, or any party interested therein, to proceed to enforce said contracts, and prosecute and collect said assessments, liens, or claims, in the same manner, and with like effect as they might or could have done, if said ordinance had been duly recorded, within thirty days after the passage thereof, provided the same should be recorded within twenty days after its passage.   Within those twenty days it was recorded.   But the paving and grading had been done, and this suit was pending before the healing act had any existence.

It is now contended, that the District Court erred in instructing the jury that the effect of the Act of Assembly was to render the ordinance as valid and binding as if it had been recorded within the time prescribed by the charter of the city.   It is insisted, that the enactment was unconstitutional, inasmuch as it created a liability upon the defendants that did not previously exist.

The principle upon which rests that numerous class of statutes which charge lots of ground with the expense of grading and paving the streets in front of them, is that the value of the lots is enhanced by the public expenditure.   It is obviously just that the property which has been principally benefited should be charged with a share of the expense of the benefit.   Now it has repeatedly been ruled, in this and in other states, that the legislature may impose upon a local district a tax to pay the expense of a public improvement already made.   Such laws interfere with no contract, and divest no vested rights.   Thomas *v.* Leland, 24 *Wend.* 65, is a remarkable case of the kind.   The public has a right to demand that a lot-owner shall contribute to pay for a public work which has benefited his property, and wherever there is a right, though imperfect, the constitution does not prohibit the legislature from giving a remedy.   In Hepburn *v.* Curts, 7 *Watts* 300, it was said, "the legislature, provided it does not violate the constitutional prohibitions, may pass retrospective laws, such as in their operation may affect suits pending, and give to a party a remedy which he did not previously possess, or modify an existing remedy, or remove an impediment in the way of legal proceedings."   What more has been done in this case?   The Acts of 1849–'51–'52 declared that the costs and expenses of paving and grading the streets should be reimbursed to the city by assessments upon the lots fronting on those streets.   This was an assertion of a right in the city to reimbursement, and of a liability in the lot-owner to make it.   That right is not dependent for its existence, upon the form in which the statutes require it to be asserted.   Giving a remedy presupposes the existence of the right.   The abstract right is no greater and no less because the work is required to be done under an ordinance.   An ordinance was however required by the

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

statutes, and one was passed.   While it was in force, contracts to do the work were made in pursuance of it, and the liability of the city was incurred.   But it was suffered to become of no effect by the failure to record it.   Notwithstanding this, the grading and paving were done, and the lots of the defendants received the benefit, at the public expense.   Now, how can the omission to record the ordinance diminish the equitable right of the public to reimbursement?   It is, at most, but a formal defect in the remedy provided—an oversight.   That such defects may be cured by retroactive legislation need not be argued.

There is not the least merit in the fifth assignment of error. The evidence shows that the ordinance was properly recorded on the 9th of February 1859.   The times of its publication were conclusively established by the oath of McGonigle, and the direction to publish in the *Dispatch* was not, of necessity, by ordinance. Had there been no other evidence of direction, it would have been presumed from the record itself.

The next assignment of error has reference to the question whether "First" street was a "permanent" street within the meaning of the Act of April 8th 1851.   The authority given to the city was "to grade and regrade, pave and repave any *permanent* street, lane or alley, or sidewalk, or any part thereof."   The evidence in this case was, that First street was laid out and opened as a public street in 1830, and that it had been travelled and used as such, from that year, without interruption, until it was graded and paved, a period of more than twenty-five years.   No objection to its use had ever been made.   This was sufficient, in the first instance, to raise the presumption that the public had a right of passage over it.   The defendants, however, requested the court to charge the jury that "if the street was opened for his own convenience or profit, by a tenant renting the land as an enclosed pasture-field from, and holding under Mr. Croghan, or Mr. Denny, as the executor of O'Hara, by virtue of a twenty-one years' lease, expiring about the year 1851, and during the minority of Mrs. Schenley, the owner, who was before her majority, and is yet under the disability of marriage, and residing beyond seas, it is no such dedication as would divest her rights in favour of the public, or render her, or the property through which it passes, responsible in this suit."

The court refused to affirm this proposition, under the circumstances of the case, and we think correctly.   It did not legitimately arise from the evidence.   It was not in proof upon what terms and conditions Garrard, the alleged tenant, held the land.   It was not proved, who opened the street, or by what authority it was done.   For aught that appeared, it may have been opened under process of law.   But if not, if it was opened by the tenant, at his own instance, in the year 1830, the court could not have charged

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

as was requested. That a tenant for years cannot bind his rever-
sioner, by a dedication to public use, must be admitted, but it is
not to be maintained, that a married woman may not dedicate her
land for a public highway. Joining with her husband, she may
convey, and, therefore, a dedication, which is but a limited con-
veyance, may be presumed against her and her husband. Nor is
it necessary to a dedication, that there has been twenty-one years
of adverse enjoyment, though it is to the presumption of a grant,
when time alone is relied upon to raise it. Wherever there is an
actual giving of land for a public highway, accepted by the public,
though there be no deed, the dedication is complete. The period
of twenty-one years of enjoyment, after which a presumption of a
grant is made, is fixed from analogy to the statute of limitations;
and for the same reason, for which it is not permitted to add cover-
ture to infancy, in order to avoid the running of the statute, must
the fact of Mrs. Schenley's coverture after the expiration of
Garrard's lease, be of no consequence. The facts of the case, as
proved and assumed by the defendants, are, that the street was
opened in 1830, and devoted to use as a public highway. Grant,
that the dedication did not then bind Mrs. Schenley. The street
continued open and in constant use until 1851, when the tenant's
term expired. Then, instead of disavowing what he had done,
instead of closing the street, and resuming her rights as the rever-
sioner, she permitted the street to remain open and used by the
public, four or five years longer, until after the grading and paving
had been done, until after the costs and expenses had been in-
curred, and never, until the trial of this cause, has she pretended
that it was not a permanent street. Under these circumstances,
we cannot doubt, that the jury should have presumed a valid dedi-
cation, and that the court was right in so instructing them.

It is next contended, that the court erred in charging the jury,
that there was nothing in the terms of the contract (made by the
city authorities for doing the work) which would warrant its being
declared void, for want of authority to make it, and nothing which
would prevent the city from recovering interest on the assessments,
from the date of the demand.

The stipulation in the contract, that the city should pay only
on collection of the assessment from the lot-owners, was a stipula-
tion for credit. It was not for the court to say, as matter of law,
that it enhanced the cost of the work; and even if it did, the con-
tract would not have been void on that account. The city was
under no obligation to do the work by contract. It might have
hired men to do it by the day. It could not, indeed, assess upon
the lots more than the actual expenses were, and the lot-owner
would not be liable for more than reasonable expenses. But in
the absence of fraud or gross extravagance, both of which were
negatived by the jury, the measure of the liability of the lot, was

the expense to the city, whether the work was done by contract or not. That expense the lot-owner was bound to pay on demand. It then became due, and of course, then began to bear interest. It was the duty of the city to collect it when due. From that time, therefore, it was itself liable to pay interest, and consequently, could collect interest from the lot-owner.

There is nothing in the eighth assignment of error. The Acts of Assembly authorized assessments for paving sidewalks as well as streets. The power to pave, includes the power to furnish and do all that is necessary, usual, or fit for paving. How could the court say, as a legal proposition, that curbstones were neither necessary, customary, nor fit for such a work? Common observation shows that it is usual to employ curbstones, when streets and sidewalks, or footways are paved, and that they are among the ordinary means used. But whether they are or not was a question for the jury.

Nor is there any merit in the ninth assignment. It is not easy to see what bearing the point proposed, and which the court refused to affirm, had upon the issues tried. Had the proposition been affirmed, it could have interposed no obstacle in the way of the plaintiff's recovery in this case, whatever might have been the effect of a verdict and judgment upon other writs of *scire facias*. The point was, however, answered rightly. First street was a long highway, intersected by other streets. Thus the property of the defendants was divided into ten or more distinct blocks or squares. It would be inconvenient and irregular to have grouped in one assessment these separated and distinct pieces of property. They could not have been sold as one, and they were not liable as one. Nor is there anything in the Act of Assembly which requires a joint assessment of all the properties which a lot-owner may have upon any one street.

Nor do we see any objection, under the circumstances of this case, to the mode in which the assessments were made upon these different blocks. The defendants were owners of all the property on both sides of First street. An equal assessment was made upon each foot of the frontage on the street. This was consistent with the Acts of Assembly, and not at all injurious to the defendants.

The eleventh, twelfth, and thirteenth points of the defendants assume that the substantial plaintiffs in the suit were the contractors who did the grading and paving, and not the city which employed them. On this hypothesis, it was contended, that there could be no recovery in this action, because, for certain assigned reasons, it is thought, the contractors could not have recovered against the city. We think the assumption is without foundation. It has nothing more to sustain it, than a clause in the contract, making the time of payment by the city contemporaneous with

[Schenley *et ux. v.* The Commonwealth for The City of Allegheny.]

the payment of the assessments by the lot-owners. That stipulation gave to the contractors no interest in the assessments, either in law or in equity. It was wholly for the protection of the city, not to give new rights to the contractors. Their only remedy is against the city. But if the contractors are not the real or substantial parties plaintiff, the defendants have no concern with the state of things between them and the city. As lot-owners they are liable, under the statute, for the costs and expenses of grading and paving, no matter how it was done, whether by contract or not, and no matter who may have been the immediate agents in doing the work. They have no interest in anything beyond the amount of the expenses. We hold, therefore, that the District Court was right in the answers given to these points.

It is only necessary to remark in regard to the fourteenth assignment, that the Acts of Assembly make the measure of liability of the lots, not the *value* of the work done, but the *costs and expenses*. The work may not have proved so valuable as was expected, but if there was no fraud or carelessness (and the jury have found that there was none), the city had a right to recover the cost.

The points reserved have already been considered in what we have said respecting the several assignments of error.

It remains only to add, that it is impossible for us to discover from the bill of exceptions, whether the testimony of Captain Hays, offered and rejected, was contradictory of anything mateterial, which had been proved by Mr. Boyd. We cannot, of course, say that the defendants may have been injured by its being overruled. It would seem, from the reasons given by the judge for rejecting it, that the testimony which it proposed to contradict was itself irrelevant and immaterial. If so, it was not competent for the defendants to call a witness to raise an issue upon it.

The judgment is affirmed.