# West *versus* Cochran.

1. It is well established that irregularities in the proceedings of the Orphans' Court cannot, after their confirmation, be urged against their validity, in a collateral proceeding.

2. Under the Act of April 18th 1853 (the Price Act) the Orphans' Court has jurisdiction upon the petition of the guardian of minor children of a decedent to authorize a mortgage of their interest in his real estate in order to raise money for the payment of his debts; nor is this jurisdiction ousted by the fact that the administrator d. b. n. c. t. a. has obtained a prior order for the sale of the same premises, which order, being objected to by the guardian, remained open and undetermined.

3. An administrator d. b. n. c. t. a. obtained an order of the Orphans' Court for the sale of his testator's real estate for the payment of debts. His petition described the real estate and contained a list of creditors. Having sold a part of the real estate, he applied for an alias order to sell the remainder, which was granted. The guardian of the decedent's minor children, who was also the devisee for life of his estate, filed exceptions to the return of sale made thereto, and obtained a rule to set aside the order on the ground that the money could be raised by a mortgage, and the estates of the minors in remainder be saved to them. The guardian then applied by petition for an order to borrow the amount necessary to pay the balance of indebtedness, by a mortgage of the minor's interests, and, in pursuance of the order thereon granted, executed the mortgage and entered security for the proper application of the fund obtained.

*Held,* in a subsequent action of ejectment on the mortgage, that the various petitions and orders of court were so connected that the omission in the guardian's petition of any description of real estate mortgaged, and of a list of creditors, was supplied by reference to the prior proceedings.

November 1st 1883.    Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ.    TRUNKEY, J., absent.

ERROR to the Court of Common Pleas No. 2 of *Allegheny county :* Of October and November Term 1883, No. 140.

This was an action of ejectment on a mortgage, by H. B. Cochran against Charles Kuhlman, William Kuhlman, Sophie Kuhlman, Priscilla Kuhlman and Andrew Large, guardian of the minor children of Christian Kuhlman, deceased : John G.

[West *v.* Cochran.]

Messner and Lydie, his wife, William D. West, Michael Cain, Edward Rodgers, John Schnitzer, Mary Shannon, Thomas Burns, Frank Solders, M. E. Scott, Peter McGraw and James Burns; to recover possession of three lots in the twenty-fourth ward of Pittsburgh.

On the trial, before EWING, P. J., it appeared that Christian Kuhlman died in December 1866, seised of the premises in dispute. At the time of his death, his real estate was incumbered with judgments amounting to over $12,000, and debts not of record amounting to $2,000 additional. On August 1st 1869, A. B. Stevenson, the administrator d. b. n. c. t. a. of Kuhlman's estate, presented his petition to the Orphans' Court, for an order to sell real estate for the payment of debts. Annexed to this petition were the usual schedules containing the inventory of personal estate, descriptions of the real estate and lists of creditors, with the amount of their claims. The order was granted as prayed for, and under this order the administrator sold several pieces of land, and applied the proceeds to the payment of debts, but the amount realized was insufficient to pay them all. The administrator made due return to the order of sale, setting forth these facts in detail, and showing that some $7,000 of debts yet remained unpaid, to pay which, it would be necessary to sell other of decedent's real estate. The court granted an alias order of sale, under which the administrator sold a portion of the real estate for $7,250. The administrator having made return thereof, Mrs. Caroline Kuhlman, the widow of decedent and guardian of his minor children, filed exceptions to the return, and also applied for a rule to set the sale aside, which rule was granted, and with the exceptions, remained undetermined.

Upon July 8th 1881, Caroline Kuhlman, guardian as aforesaid, presented her petition to the Orphans' Court, setting forth she was the guardian of the six minor children of Christian Kuhlman, deceased ; " that she is the devisee of — under the last will and testament of said Christain Kuhlman, deceased, entitled to the rents, issues, and profits of the estate of said Christian Kuhlman during her life, and that she has assigned, transferred and set over said rents, issues and profits for the purpose of liquidating the debts of said estate, which, as she has been informed, amount to some $6,000 or $7,000, and which said debts are a lien against the estate of the aforesaid minors, and, being desirous to benefit the estate of said minors, deems it necessary to mortgage the said estate and borrow money sufficient to pay off the indebtedness of said estate and liquidate the old indebtedness entirely, and then appropriate, or have appropriated the rents, issues and profits on the estate as it arises to the liquidation of the money borrowed as aforesaid

[West *v.* Cochran.]

Your petitioner, therefore, prays your Honors to grant this her petition, and authorize her to borrow money sufficient to pay off said indebtedness to an amount not exceeding $7,000."

The court granted this petition and ordered security to be entered in $10,000. Mrs. Kuhlman then filed her bond in that amount with Charles Kuhlman and John R. Large, as sureties conditioned for her faithful execution of the trust imposed upon her and the proper appropriation of the money thus authorized to be borrowed to the payment of the debts against the estate. In pursuance of the order of court, Mrs. Kuhlman made return on October 26th 1871, that she had negotiated a loan with the Freehold Bank & Building Association for $7,000, and had executed a mortgage of the premises in dispute to said company, to secure its payment. Charles Kuhlman, a son of decedent, then of full age, joined in the mortgage. This mortgage was duly recorded, and on December 23d 1872, assigned to H. B. Cochran, the plaintiff. Soon after making the mortgage, Caroline Kuhlman died, and Andrew Large was appointed guardian in her stead. It appeared that the money thus obtained on mortgage was not appropriated to the payment of the decedent's debts.

On July 9th 1869, Henry March had obtained a judgment against the estate of Christian Kuhlman, deceased, in the sum of $318. This judgment was revived by proceedings thereon duly commenced on May 29th 1874, and judgment was entered on December 2d 1874, for $110.90. This judgment was also revived, and on May 26th 1879, judgment was subsequently entered for $149.16.

The interest on the mortgage being unpaid, Cochran brought suit thereon and obtained judgment upon it.

On May 20th 1873, an ordinance was passed by the city of Pittsburgh authorizing, under the Act of Assembly respecting street sewers in said city, approved January 6th 1864, the construction of a sewer on Twenty-seventh street, near the Kuhlman property. The assessments for the said improvement against the Kuhlman property amounting to the sum of $14.40, with interest and commissions, were entered as a lien of record on July 14th 1874, against the Kuhlman heirs. On May 17th 1879, an alias levari facias was issued by the city of Pittsburgh on the said municipal lien, and the said real estate was sold to William D. West, the defendant below, a creditor of the estate, for the sum of one hundred dollars; said deed was duly recorded, and he went into possession.

On March 3d 1883, this ejectment was brought on the mortgage held by Cochran against West and the other defendants holding as tenants under him, to recover possession of the premises covered by his mortgage. Evidence was produced in

[West v. Cochran.]

behalf of the plaintiff to show that W. D. West sent for Miss Sophia Kuhlman, the eldest daughter, then in charge of the family on the property, directed her to tear down any sheriff's sale notice that might be put up, explained to her that his attorney would act in her behalf, that steps would be taken to have Cochran's mortgage defeated, procure a sheriff's sale on a certain sewer lien held by the city of Pittsburgh, quietly buy in the property at a small price, and after payment of West's alleged debt, reconveyance to be made to the Kuhlmans by West, clear of all incumbrance, and they by means of the sheriff's sale on the municipal lien obtained the title in fraud of the plaintiff. The evidence on this point was contradictory, and the court left the question of fraud to the jury, reserving the question of law raised as to the regularity of the Orphans' Court proceedings under which plaintiff's mortgage was made.

The jury found the following special verdict: "We find for the plaintiff for the undivided seven tenths of the land described in the writ and his mortgage, with six cents damages and costs, to be by him held and possessed, until the rents, issues and profits thereof shall be sufficient to pay and satisfy his mortgage debt of eleven thousand two hundred and thirty-five dollars, being the amount now due and unpaid; subject, however, to the opinion of the court upon the question of law reserved, to wit: as to whether or not the proceedings in the Orphans' Court of Allegheny county at No. 132, June term 1871, and the mortgage of the plaintiff is sufficient to and did bind the estate of the minor children named in said proceedings in the property in question, there being at the time an administrator of the estate of Christian Kuhlman, deceased, competent to act and having applied for the authority to sell for the payment of debts, as set forth in the proceedings at No. 131, June term 1869, in evidence, and Mrs. Caroline Kuhlman having died in December 1871. If the court be of the opinion that the law is with the plaintiff, judgment to be entered on the verdict in favor of the plaintiff. If the court be of the opinion that the law is with the defendant, judgment to be entered in favor of the plaintiff for the undivided one-tenth of the land described in the writ and mortgage non obstante veredicto."

After argument thereon, the court entered judgment for the plaintiff in an opinion by Ewing, P. J. Thereupon defendant West took this writ, assigning for error, inter alia, the entry of judgment for the plaintiff upon the above verdict of the jury.

*Thomas M. Marshall* (with whom were *Robb & Fitzsimmons*), for plaintiff in error.—There was nothing in the petition of the guardian, Caroline Kuhlman, to give the court jurisdiction. The court simply approved the prayer of the

[West *v.* Cochran.]

petition and authorized the mortgage of something not set out in the petition. The Act of April 18th 1853, § 3 (Price Act), provides "that such sale, mortgaging, leasing or conveyance on ground rents may be decreed on the petition of any trustee, guardian, committee, or person interested, clearly setting forth the facts needful for the information of the court." Br. Purd. 1243. It is undoubtedly well settled that the Orphans' Court is a court of record and the decrees thereof will not be inquired into collaterally, and will be regarded as conclusive upon parties and privies. Yet that court, like all other courts, must have a record upon which to base a decree. Any other rule is productive of injurious consequences, and evil results may flow therefrom. How easy it would be for a party to present a paper containing nothing germane to the matter at issue, and through some inattention of the court or through press of business, a decree should be made by the court, authorizing some thing done positively ruinous or prejudicial to the interest of parties not even referred to in the petition. The title to the real estate for payment of debts was vested in the administrator c. t. a. and he was not made a party to the proceedings although he had obtained an alias order for the sale of the very property. The Orphans' Court had no jurisdiction therefore to make the order to mortgage.

*J. F. Slagle* (with whom was *C. A. O'Brien*), for defendant in error.—The facts necessary to be set out in the petition in order to give the court jurisdiction are : First, that the property be held for or owned by minors. Second, that it shall be for their interest and advantage that it be mortgaged. It is not disputed that the minors owned the property. That it was for the interest of the minors that this property should be mortgaged, and the income appropriated to the payment of the debts, as is also alleged in the petition, can admit of no doubt. These jurisdictional facts being established, any other omission would be a mere irregularity, as is said in Torrance *v.* Torrance, 53 Pa. St. 505. Upon the same principle it was held that under the Act of 1832, the provision that no authority to sell should be granted until a bond had been filed, was merely directory: Lockhart *v.* John, 7 Pa. St. 137. So, also, was the provision that an executor or administrator should first file an account: Weaver's Appeal, 19 Pa. St. 416 ; and under the requirement that an appraisement of the personal estate and statement of real estate should be exhibited to the court, it was not necessary to file it with the petition, and upon an order made it would be presumed that it had been presented to and examined by the court: Stiver's Appeal, 56 Pa. St. 9. Though in this case no schedules were filed with the petition,

it is not left to presumption that they were actually exhibited to the court. As stated by plaintiff in error, a proceeding was instituted by the administrator for sale of the real estate afterwards mortgaged, and the schedules and statements as printed in the appendix were part of the proceedings in that case.

Mr. Justice GREEN delivered the opinion of the court, January 7th 1884.

The petition of Mrs Kuhlman as guardian of her minor children for an order to mortgage the real estate devised by her husband's will, was certainly not as full and precise in its statements as it might have been. It contained, however, the necessary jurisdictional facts to bring the application within the power of the Orphans' Court under the Act of 1853. While the land of the decedent is not described in the petition, it was described in the petition of the administrator for an order of sale in 1869; the administrator had made return of sale of several of the lots described in the petition, and had, in April 1871, applied for an alias order to sell some more, which last application was opposed by the widow, on the ground that the administrator had not applied the proceeds of former sales to the payment of debts, and that there was no necessity for any further sales, as the rents and profits of the real estate would in a few years be sufficient to liquidate all the indebtedness. Then, in July 1871, she filed a further petition, asking for an order to raise money by mortgage to pay off the remaining debts, which she set forth in her petition as amounting to about $6,000 or $7,000, alleging that the debts were a lien upon the real estate of the minors, and that it would be for their benefit that the money should be raised by mortgage, and subsequently paid by applying the rents, issues and profits in discharge thereof. She asked, in her capacity as guardian, for an order to mortgage the real estate of the minors, and the order was granted. She gave bond with sureties in the sum of ten thousand dollars, reciting an order to herself as guardian, to mortgage the real estate of the minors, conditioned for the faithful execution of the trust, and in October following she made return under oath that she had negotiated a loan with a bank for $7,000, and had executed a mortgage to the bank to secure the same, on lots 6, 7, 8 and 9 in Christian Ihmsen's plan, and asked for the confirmation of the proceedings. These lots described in the mortgage were a part of the real estate of the decedent, described in the same manner in the original petition of the administrator for an order to sell for payment of debts. In view of all these circumstances we cannot think it a sufficient objection now to the validity of the order to mortgage, that the real estate to be mortgaged was not properly described

in the petition. The various papers on file were really a part of one proceeding, and must be read together. Regarded in this manner, there is no difficulty in understanding from the papers on record just what real estate was covered by the order of the Orphans' Court and described in the mortgage. The absence of an additional schedule of debts from the petition of the guardian is of still less consequence. Such a schedule had already been furnished by the administrator, and was a part of the record, and as the object of the petition was to prevent a sale and simply discharge the unpaid balance of the debts by money raised on mortgage, there was no occasion for a repetition of all the details of the indebtedness not previously liquidated. Indeed, it might not have been in the power of the guardian to furnish such a statement without the final settlement of the administrator's account.

The objection that there was an outstanding unexecuted alias order of sale to the administrator at the time the order to mortgage was granted is without merit. We cannot discover from the printed record what became of the alias order. There was a return of sale of two of the purparts, 8 and 9, and a confirmation nisi which was to become absolute unless excepted to in ten days. But the record shows that exceptions were filed within the ten days by the guardian, and shortly afterwards her petition for an order to mortgage was presented and order granted and executed. While the disposition of the exceptions to the return of sale does not appear, we are bound to infer they must have been sustained, as otherwise the court would not have granted the order to mortgage the same premises which were included in the return of sale to the alias order. Moreover, all these objections relate merely to the regularity of the proceeding in the Orphans' Court, and it is the well established rule that they can not be urged against the validity of the proceeding after confirmation and in a collateral proceeding: Lockhart *v.* John, 7 Barr 137 ; Weaver's Appeal, 7 Harr. 416 ; Stivers' Appeal, 6 P. F. S. 9. On the question of jurisdiction we see no difficulty under the Act of 1853. Of course it is true as a general rule that it is the duty of the administrator or executor of a decedent to pay the debts owing by him at the time of his death, and to raise the money for that purpose by proper proceedings. But here it was alleged this duty had not been performed. It was further shown that the real estate of the minors was subject to the lien of debts not of record, and that it would conduce to the interest of the minors that the estate should be mortgaged and not sold, in order to raise money for the payment of the debts. The title to the property was in the children acquired under the will of their father. The widow, who was the guardian, agreed that her life estate should

[Jennings *v.* Hare.]

be applied to the payment of the debts. All the facts required by the Act of 1853 to give jurisdiction to the Orphans' Court to make the order to mortgage were present and were substantially set out in the petition. There is no express language in the Act, nor are there any words producing a necessary inference, that an order to raise money to pay debts can only be granted to an executor or administrator, nor is there any prohibition express or implied against the granting of such an order to a guardian. On the contrary, the letter of the Act expressly authorizes the court to grant to a guardian an order to sell, lease or mortgage, the real estate of minors, " whenever a decedent's real estate is subject to the lien of debts not of record." We could not deny the power except by implication against the proper and natural meaning of the words of the statute, and this we can not do.

The question of fraud in the defendant's title was a pure question of fact and was fairly left to the jury by the court below. There was ample evidence in the testimony of Mr. Fitzsimmons alone, not only to warrant the court in leaving the question to the jury, but to justify the jury in finding the verdict for the plaintiff.

Judgment affirmed.