## JOHN SPENCER v. J. F. JENNINGS.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Re-argued October 23, 1888—Decided January 7, 1889.

1. Jurisdiction to order the sale or mortgage of the real estate of a decedent, wherever situate, upon the petition of an executor or administrator for the payment of debts, whether liens of record or not of record, is exclusively in the Orphans' Court of the decedent's domicil: §§ 31–34, act of March 29, 1832, P. L. 198; § 20, act of February 24, 1834, P. L. 76.

2. Neither the Orphans' Court of the decedent's domicil, nor that of another county where his real estate is situate, has jurisdiction to order

Statement of Facts.

the sale or mortgage of the real estate of a decedent, under the act of April 18, 1853, P. L. 503, upon the petition of an executor or administrator showing that minors are interested therein and that it is subject to the lien of debts not of record.*

3. One tenant in common of a fee simple estate, which is unaffected by entailment, limitation by way of contingent remainder or executory devise or restriction to any particular use, cannot compel another to a sale of the entire title, because an undivided interest is held by a minor or because the whole is subject to the lien of debts not of record.

4. A mortgage upon a decedent's real estate lying in Allegheny county, executed under the order of the Orphans' Court of said county, upon the petition of the administratrix of a decedent domiciled in Butler county showing that minors are interested in the land and that it is subject to the lien of debts not of record, is without lawful authority and void: Grenawalt's App., 37 Pa. 95; Hower's App., 55 Pa. 337, distinguished.

Re-argued before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 188 October Term 1886, Sup. Ct.; court below, No. 311 April Term 1884, C. P. No. 2.

To the first Monday of March, 1884, an action of ejectment was brought by John Spencer and C. A. Spencer, his wife, in right of said wife, Margaret E. Spencer, and Fred. Waldschmidt, guardian of Henry and Edward Schumacher, against Nicholas Freichtel, to recover a tract of 115 acres in Plum township. Subsequently John F. Jennings was brought in as the real party defendant. The plea was, not guilty.

At the trial on April 9, 1886, before WHITE, J., the plaintiffs showed title to the land in dispute out of the commonwealth and in William A. Schumacher by deed from John Donnell and wife dated October 27, 1854; that said William A. Schumacher died resident in Butler county in 1858, seised of said land lying in Allegheny county; that plaintiffs were his heirs at law living at the date of the suit, and they and their mother had occupied the land in dispute until 1868.

---

* An Orphans' Court of the jurisdiction of the decedent's domicil, upon the petition of an executor or administrator, has ordered the sale or mortgage of lands for the payment of debts scheduled with the petition: may a private sale be made, returned, and confirmed under § 3, act of April 13, 1854, P. L. 368? Query de hoc per Rep.

The plaintiffs having rested, the defendants offered the record at No. 90 October Term 1860, O. C., showing a petition and order of the Orphans' Court directing a mortgage of the property in dispute, and the acknowledgment of the mortgage in open court.

Objected to, for the reason, in substance, that the Orphans' Court of Allegheny county did not have jurisdiction to order such mortgage under the petition filed.

By the court: Objection overruled.[3]

The said record showed that on December 15, 1860, J. Caroline Schumacher presented her petition to the Orphans' Court of Allegheny county, setting forth that William A. Schumacher, late of Butler county, died on November 3, 1858, seised of a certain tract of land in Allegheny county, containing 115 acres, more or less, and leaving to survive him his widow, the petitioner, and three children who were minors; that letters of administration upon the estate of said deceased had been granted to the petitioner by the register of wills, etc., of Butler county on November 11, 1884: "Your petitioner further represents that the said real estate is subject to the lien of debts due by said decedent, and not of record, and that it is for the best interest and advantage of those interested therein that the same should be mortgaged for the purpose of raising a sufficient amount of money to pay off and discharge the debts due by the estate of said decedent.

"Your petitioner therefore prays that your honors will authorize and empower her, by order and decree of your honorable court, to mortgage the real estate for the sum of seven hundred dollars, payable in three years from date, with interest from date payable annually, . . . . ."

Said petition, verified by affidavit, having been filed, the court, prout patet, on the same day appointed H. P. Mueller, Esq., guardian ad litem for the three minor children, naming them, and directed "that a citation issue commanding [him] to be and appear before this court on ten days notice thereof, then and there to answer the foregoing petition in the name and in behalf of said minors."

On the same day, prout patet, the answer of said minors by H. P. Mueller, the guardian, was filed: "The said respondents represent that the facts set forth in the petition of said Julia

C. Schumacher are true, and that it will be for the great interest and advantage of these respondents that the said Julia C. Schumacher have power, by order of this court, to mortgage the said real estate in the manner and amount as therein prayed; and furthermore said not."

On the same day, prout patet, the bond of the petitioner, with two sureties, in the sum of $1,500, was presented and the said Orphans' Court then signed a formal order approving the bond and concluding: " the said court do order and decree that the said Julia C. Schumacher have authority to execute her bond, with a mortgage to secure the same, on the real estate mentioned and described in the said petition in manner and amount as prayed for in said petition, and that the money raised on said mortgage be applied according to law to the discharge of such debts as may be liens on said real estate, and the remainder of said money, if any, she hold subject to the further order of this court."

Said record also showed the minute: " December 17, 1860, mortgage acknowledged in open court."

Following the foregoing offer, the defendants, under objection and exception to the plaintiffs, were permitted to put in evidence a recorded mortgage executed by Julia C. Schumacher to J. M. Sowers, dated December 17, 1860, in the sum of $1,400, conditioned for the payment of $700 in three years from the date thereof, etc., and reciting that it was made and executed by virtue of said order of court; also, the record of a judgment in a scire facias upon the mortgage to No. 125 November Term 1866, against Julia Caroline Jones, formerly Schumacher; also, the record of a sheriff's sale under a levari facias at No. 107 November Term 1866, and an auditor's distribution of the proceeds of sale; with title by various mesne conveyances from the sheriff's vendee to John F. Jennings the defendant.

At the close of the evidence the defendants requested the court to charge that under all the evidence the verdict should be for the defendants.

By the court: There are no questions of fact for the jury to pass upon. The questions of law can better be heard and decided by the court in banc. The point is affirmed and leave granted for plaintiffs to file a motion for a new trial.[1]

The jury, under direction returned a verdict for the defendants.

Subsequently, the rule for a new trial was discharged, and judgment entered upon the verdict. The plaintiffs thereupon took this writ and assigned as error, inter alia :

1. The answer to the defendants' point.[1]
2. The direction to find for the defendant.
3. The admission of defendants' offer.[3]

The cause was argued in this court on November 6, 1886. On January 3, 1887, opinion by Mr. Justice TRUNKEY, the judgment was reversed with a venire de novo : reported, 114 Pa. 618. On January 24, 1887, a re-argument was ordered, upon the motion of the defendants.

*Mr. James Fitzsimmons* (with him *Mr. John S. Robb*), for the plaintiffs in error :

1. Clearly the provisions of §§ 31 and 32, act of March 29, 1832, P. L. 198, placed the responsibility of the sale or mortgage of a decedent's lands where the interest of those affected can best be guarded, in the Orphans' Court which has jurisdiction of the accounts of the executor, administrator or guardian. Should an administrator have the power or right to sell and dispose of lands in any county, without pursuing the provisions of said act, valuable property could easily be frittered away or wasted, and the proceeds squandered without the knowledge of the heirs and others. These provisions of the act are not directory merely, but mandatory.

2. The act of April 18, 1853, P. L. 503, is an enlarging or enabling statute. It was designed to make "real estate freely alienable," as the preamble recites, and to strike off the shackles of certain estates, which under the act of 1832, would have remained in chains until the contingency that bound them had passed. It does not expressly or by implication repeal any of the provisions of the act of 1832, and the entire current of legislation, dating from 1832 to the present time indicates that the act of 1832 was the parent stem upon which was engrafted the acts of 1834, 1851, 1853, and other acts down to the present time. While the act of 1853 does not in precise terms provide that the provisions of the act of 1832 regulating the

sale or mortgaging of land by an administrator, in counties other than the county of the domicil of the decedent, should be strictly followed as to mode of procedure, yet the same, we submit, is plainly inferable from the act of 1853, itself.

3. The position taken has been practically sustained by this court in several cases. "The Orphans' Court of Jefferson county had jurisdiction of this matter. Having jurisdiction over the accounts of the administrator, it had the right to order a conversion of the real estate for the payment of his debts. It is true that as to the land lying in Clearfield county, the Orphans' Court of Jefferson county could not consummate the conversion of the real estate in Clearfield county into money, without the aid of the Orphans' Court of the latter county. But in this matter the Orphans' Court of Clearfield county is merely ancillary to the Orphans' Court of Jefferson county; the latter court is the actor, but it uses the hand of the Orphans' Court of Clearfield county to execute the decree:" Lane v. Nelson, 79 Pa. 411. And see Gordon's App., 93 Pa. 365; Scott on the Intestate Laws, 304–306; Packer's Est., 7 Phila. 473; 1 Rhone's O. C. Prac. 525–6.

4. The jurisdiction of any court exercising authority over a subject may be inquired into in every other court where the proceedings of the former are relied on and brought before the latter by a party claiming their benefit: Elliott v. Piersol, 1 Pet. 328; Thompson v. Tolmie, 2 Pet. 157; Wilkinson v. Leland, 2 Pet. 627. No court however great its dignity can arrogate to itself the power of disposing of real estate without the forms of law. It must obtain jurisdiction of the thing in a legal mode. A decree without notice would be treated as a nullity. And so must a sale of land be treated, which has been made without an order or decree of court, though it may have ratified the sale: Shriver v. Lynn, 2 How. 43; Pittsburgh v. Walter, 69 Pa. 366; Painter v. Henderson, 7 Pa. 48; Welty v. Ruffner, 9 Pa. 224; Keech v. Rinehart, 10 Pa. 242; Dixey's Exrs. v. Laning, 49 Pa. 143; Leedom v. Lombaert, 80 Pa. 390; Lockhart v. John, 7 Pa. 139; McKee v. McKee, 14 Pa. 231; Torrance v. Torrance, 53 Pa. 510; Gallaher v. Collins, 7 W. 554; Scott on the Intestate Laws, 366, 367. The petition must set out facts necessary to give the court jurisdiction: Swayne v. Lyon, 67 Pa. 439; Torrance v.

Torrance, 53 Pa. 511; Jones v. Jones, 12 Pa. 355; Gordon's App., 93 Pa. 361.

*Mr. W. K. Jennings* and *Mr. D. T. Watson,* for the defendants in error:

1. Section 31, act of March 29, 1832, P. L. 198, and § 20, act of February 20, 1834, P. L. 76, had already vested jurisdiction under certain circumstances in the Orphans' Court of the decedent's domicil, and neither one of those acts gives as a reason authorizing a sale of real estate that the same is subject to the lien of debts not of record. The act of 1853 then gave to the Orphans' Court where the real estate was situate jurisdiction to sell for a cause different from that which already vested jurisdiction in the court of the decedent's domicil. Under the acts of 1832 and 1834, it was necessary to show that the personal estate of the decedent was insufficient for the payment of the debts. Under the act of 1853, nothing need appear but the fact that the real estate is subject to the lien of debts not of record, and that it is for the advantage of those interested therein that the same should be sold. A petition which avers these facts gives jurisdiction under the act of 1853, but not under the acts of 1832 or 1834.

2. In the late case, Morrison v. Nellis, 115 Pa. 41, it was held that the Orphans' Court of Allegheny county had jurisdiction on the presentation to it of a petition by a guardian appointed in Washington county, to order the sale of real estate situate in Allegheny county. This court said: "Clearly on the face of the petition, the case was within the letter and spirit of the act of 1853, relating to the sale of real estate. It was presented by the guardian of the children, not to raise money for their education and maintenance, but for the sole reason that it was for their interest to sell the land." Now, if a guardian appointed by the Orphans' Court of Washington county may present a petition to the Orphans' Court of Allegheny county under the act of April 18, 1853, containing the necessary jurisdictional averments, why may not an administrator appointed in Butler county present a petition to the Orphans' Court of Allegheny county under the act of April 18, 1853, when her petition contains the necessary jurisdictional averments? What distinction is made under the act of

April 18, 1853, between the rights of a guardian appointed in the domicil of the ward, and of an administrator appointed in the domicil of the decedent, to petition the Orphans' Court of the county where the real estate is situate for leave to sell?

3. The decisions bearing upon the questions are as follows: Grenawalt's App., 37 Pa. 95; this decision settled the doubts of many and is the chief corner stone of the practice which has grown up during the twenty-seven years which has since elapsed: Hower's App., 55 Pa. 337; West v. Cochran, 104 Pa. 482. Before 1853, no private sales of real estate could be made by administrators, but since the act of that date, private sales by administrators for the payment of debts have been almost innumerable. If this were a new question, the opposite view from the one presented might be taken without injustice to those who have relied upon the decided cases in this court. But to hold now that the Orphans' Court had no jurisdiction in this case, in the face of the decisions above cited, some of which have stood so long uncriticised, would not only injure an innocent purchaser, but would unsettle titles to the amount of millions of dollars.

OPINION, MR. JUSTICE CLARK:

In the twentieth section of the act of February 24, 1834, P. L. 76, it is provided, that whenever it shall satisfactorily appear to the executor or administrator of the estate of a decedent that the personal estate is insufficient to pay all just debts, etc., he shall proceed without delay, in the manner provided by law, to sell, under the direction of the Orphans' Court having jurisdiction of his accounts, so much of the real estate as shall be necessary to supply the deficiency, etc. The mode or manner of procedure in case of a sale by an administrator, then and now provided by law, is prescribed by the act of March 29, 1832, P. L. 198.

The residence of William A. Schumacher at the time of, or prior to, his decease was in Butler county, and letters of administration upon his estate were, after his death, in due form of law, committed to his widow, Julia C. Schumacher, by the register of wills in and for that county. The Orphans' Court of Butler county having jurisdiction of the accounts of the administratrix, had power on her application, under the act of

March 29, 1832, to authorize a sale or mortgage of the real estate of the decedent for the payment of his debts. If the real estate, with respect to which the application was made, was situated in Butler county, the Orphans' Court of that county had full power to order the sale or mortgage of such part or as much of the same as to the court should seem necessary for the purposes stated ; but if the real estate was situated in another county, the Orphans' Court of Butler county, if satisfied as to the propriety of a sale or mortgage, would have had power merely to authorize the administrator to raise, from the real estate so situated, such sum of money as was necessary for the purpose stated, designating the amount, and the Orphans' Court of the county where the real estate is situated, upon presentation of such decree, and upon proper application, had the power to make the order of sale or mortgage of so much and such parts of the land as would, in the opinion of that court, be necessary to raise the sum specified. In this form of procedure the Orphans' Court of the county having jurisdiction of the accounts, alone, has the power to decide whether or not the personal estate of a decedent is sufficient to pay his debts, to determine the amount of the probable deficiency, and to pass upon the propriety of a sale or mortgage of the decedent's lands to raise the amount required ; and for the better determination of these matters, it is provided that no authority for the sale or mortgage of real estate lying in the same or another county shall be granted until the administrator shall have exhibited to the court an inventory and appraisement of all the personal estate of the decedent, a true account or schedule of his debts and a statement of all his real estate wheresoever situated. The Orphans' Court of the county where the land is situate, if it be situate in another county, is presumed to know what part and how much of the land it would be necessary and expedient to sell to raise the sum specified ; but the jurisdiction of the court to order a sale or mortgage is dependent wholly upon the decree of the court having jurisdiction of the account.

This, in a general way, is the law regulating the sale of real estate by administrators for the payment of debts, and that it is a practicable and wise provision is shown by the fact that for fifty years or more it has remained upon our statute books without material amendment.

The general intention of the legislature in the passage of the act of 1832 was to preserve the real estate of a decedent for those entitled, excepting in so far only as the same may be required for the payment of his debts, etc. Sales of real estate by an administrator, executor, or guardian under that act are such only, therefore, as become necessary in the course of the administration or in the execution of the trust. But this proceeding was not instituted in the Orphans' Court of the county having jurisdiction of the administratrix's account: there was no inventory or appraisement of the personal property, schedule of debts or statement of the real estate of the decedent exhibited to the court: it is not pretended that the mortgage was made pursuant to the provisions of the act of 1832.

It is contended that the proceedings were authorized by and were conducted according to the provisions of the act of April 18, 1853, P. L. 503. This act was based upon a widely different policy and was intended to accomplish a wholly different purpose: it was passed because, as stated in the preamble, "the general welfare requires that real estate should be freely alienable." The intention was to untie the cords which fetter real estate, whether bound by the disability of persons, the limitations of contingent interests, or by restrictions to limited uses and purposes, and at the same time to preserve to every interest its proper share in the result: Burton's App., 57 Pa. 219; and, as it unfetters the realty from the disabilities of owners and from limited and restricted titles, it secures to the purchasers clear and indefeasible titles in fee simple. Its design was to facilitate the transmission of titles, to make real property available for commercial and business uses, to encourage and promote improvement and thereby to stimulate trade and to develop the resources of the state. The act has no reference to or necessary connection with the administration of decedents' estates. It was not passed for that purpose and cannot in any sense, we think, be regarded as in pari materia with the act of 1832.

The only question raised by this record is, whether or not, upon the facts set forth in the petition, the Orphans' Court of Allegheny county had jurisdiction to order the mortgaging of this land by the widow or the administratrix. The facts set

forth in any petition under the act of 1853, to give the court jurisdiction, must exhibit a case in which the persons interested are subject to some disability, or a title trammeled by some trust or lien, or subject to such limitation or restricted use, as described in that act. Upon a somewhat careful examination of the act we find nothing therein which could appear to give jurisdiction in this case, unless it be found to fall within some one of the following provisions, which we have extracted and set down in their order :

The act provides that such sale, mortgaging, leasing, or conveyance upon ground-rent may be decreed whenever real estate shall be held for or owned by minors, etc.; . . . . . whenever a decedent's real estate is subject to the lien of debts not of record; . . . . . or, where any party interested therein is under a legal disability to sell and convey the same. It is expressly provided, however, that nothing in this act contained shall be taken to repeal or impair the authority of any act of assembly, general or private, authorizing the sale of real estate by a decree of court or otherwise.

It is plain that if the sale had been prayed for upon either the first or third ground, the guardian of these minor children would have been the only proper party to the petition : neither the widow nor the administrator could represent them in such a proceeding. We do not understand the defendants in error to place the question of jurisdiction on either of these grounds ; the minority of the children and their title to the land are facts set forth in the petition, and their disability to convey may of course be implied, but the ground upon which they rest the jurisdiction of the court is as follows, viz.: "That the said real estate is subject to the lien of debts due by said decedent, and not of record, and that it is for the best interest and advantage of those interested therein that the same should be mortgaged for the purpose of raising a sufficient amount of money, to pay or discharge the debts due by the estate of said decedent." Now, if this petition had been accompanied by the proper inventory, schedule and affidavits required by the act of 1832, no one can doubt that the Orphans' Court of Butler county would have had full jurisdiction to order a mortgage, for the purpose stated, and this course of procedure would have been in conformity with the uniform and established practice.

Had the Orphans' Court of Allegheny county such power under the act of 1853? If the petition had been by the children through their guardian, or in their behalf, for leave to raise money by mortgage, jurisdiction would undoubtedly have attached: Morrison v. Nellis, 115 Pa. 41; West v. Cochran, 104 Pa. 482. But the administratrix did not represent the children; she did not even assume to represent them; she instituted an action against them: the court assuming jurisdiction, appointed a guardian ad litem, and it was [upon his response the decree was entered. If the court had no jurisdiction upon the petition of the administratrix, it had no power to appoint a guardian, and the children were not in court.

The second section provides, that such sale, mortgaging, etc., may be decreed " on the petition of any trustee, guardian, committee, or person interested; " but the administratrix was not a trustee, guardian, committee or person interested, within the purpose or meaning of the act. She might in a certain event be entitled to resort to the land for payment of the debts, but non constat that any of the lands were required for the payment of debts; that question was not before the court and could not be determined in this form of proceeding. As administratrix she had no interest in the land, and she stood in no fiduciary relation to the children which would make her a proper party to the petition.

Had she any better standing by reason of the fact that she was the widow of the decedent, and entitled for life to an interest in the land? The interest of the heirs was absolute and in fee; there was no entailment; no limitation by way of contingent remainder or executory devise, nor was their estate restricted to any particular use or limited purpose. Whilst the Orphans' Court, under the act of 1853, has jurisdiction to sell real estate in any of the cases recited in the act, yet it is plain that the court cannot exercise jurisdiction until a proper case is presented, at the suit of a proper person, and then only to the extent to which that person has a right to demand its exercise. One tenant in common of an absolute interest in fee cannot compel his co-tenant to submit to a sale of the whole title, under the act of 1853, simply because an undivided interest is held for or owned by a minor; nor can he insist upon a sale of the entire title, because the whole is subject to the lien of debts

not of record.   Whilst, in either case, he may upon an order
of the court, under that act, sell his own interest by an inde-
feasible title, freed from the liens not of record, he has no
standing in court to demand the sale of his co-tenant's title.
The act of 1853 has application "whether the ownership be in
severalty, joint-tenancy, co-parcenary, or in common;" but
the mere fact that lands are held in joint-tenancy, co-par-
cenary, or in common, is no ground of jurisdiction under the
act of 1853, any more than if they were held in severalty.
The act is applicable only, as we have said, when a proper
case is presented, and when the proper parties submit them-
selves to the action of the court.   The petitioner, as the widow,
in no way represented the heirs, or had any right or power
over their interest in the land, and although the debts are a
lien upon the estate as a whole, she had no standing in court
upon that ground, on her own petition, to sell their shares:
she might, perhaps, have disposed of her own title under the
order of the court, free from these liens, but she had no such
interest in their title as would give her standing to compel the
sale of theirs.

It will be observed that whilst by the act of 1853, the order
to sell or mortgage may be directed to " executors, administra-
tors, guardians, committees, or owners having a present vested
interest, as the court may order," yet executors and adminis-
trators are not embraced in the list of those upon whose peti-
tion the decree may be entered.   This omission was not
accidental; the design was, that only those actually interested
in the land, or those occupying a fiduciary relation to those
interested with respect to the land, should have any standing
in court to obtain the decree, but that the order might issue to
an executor, administrator, etc., or to a person having a present
vested interest, as the court might in its discretion decide.

In Grenawalt's App., 37 Pa. 95, Samuel Grenawalt, the peti-
tioner, was not only the executor, he was the sole devisee in fee
of the premises sold, subject to the life estate, in a part thereof,
of his sister Maria, with a limitation over in the event of the
death of Samuel's son, Calvin, to Josiah Grenawalt et al.,
which took effect as an executory devise.   Maria Grenawalt
being sui juris not only assented to, but requested the sale,
and was thereby estopped from avoiding it, in the hands of a

bona fide purchaser. The real estate " was subject to the lien of debts due by the decedent and not of record," and an executory devise was limited upon the fee. Under these circumstances, of course, the Orphans' Court of the county where the lands were situate had full power to order a sale of the entire title and estate under the act of 1853.

In Hower's App., 55 Pa. 337, the petition was by an administrator; it set forth that the decedent died seised of real estate, subject to the lien of a judgment, and of other debts not of record, leaving certain heirs, and that it was to the interest and advantage of all that it should be sold, etc.: one of the heirs claimed the land under a parol purchase from the decedent. In the court below the petition was dismissed upon several grounds: first, it was not contemplated that the court in this summary manner should settle and determine disputed titles, and thus supersede the action of ejectment; second, the petitioner was not a person interested; and, third, as the land passed under the intestate law in fee, and was not fettered by entailment, executory devise, or contingent remainder, a part only of the heirs could not compel a sale of the entire title against the will of the others, and thus deprive them of the right of partition. In this court the case was ruled, and the decree affirmed, on the first ground alone; but we are of opinion the court might have gone further and dismissed the application on other grounds.

Upon a careful review of this case, after a re-argument of it, we are not inclined to recede from the view we have heretofore had; we cannot see how the petition and decree can be treated otherwise than a proceeding by the administratrix to mortgage lands for the payment of the decedent's debts, and that, as we have already said, could only be instituted in the county having jurisdiction of her accounts.

Judgment reversed, and a venire facias de novo awarded.