# Kiskaddon, Appellant, *v.* Dodds.

*Decedent's estates—Sale of real estate—Payment of debts—Act of April 18, 1853, P. L. 503 (Price Act).*

The act of April 18, 1853 (Price Act), does not apply to a case where a petition is filed in the orphans' court by an executor or an administrator for an order of sale for the payment of debts. Spencer v. Jennings, 114 Pa. 619; 123 Pa. 184, followed.

*Decedent's estates—Orphans' court sales—Act of March 29, 1832, P. L. 190.*

Prior to the act of May 9, 1889, P. L. 182, proceedings in the orphans' court, upon the petition of an executor or an administrator for an order of sale for the payment of debts were governed by the act of March 29, 1832, which act merely contemplated a public and not a private sale.

Where an administratrix under an order of the orphans' court sells real estate, for the payment of debts, but the sale is not confirmed by reason of the inadequacy of price, and thereafter the administratrix under an order of court sells at private sale the real estate to the same bidder at an advanced price, and the record is not amended so as to make it appear that the purchaser had agreed to increase his bid, and that the court had then confirmed the sale as a public sale, it cannot afterwards be alleged that the sale was other than a private sale.

Where land subject to a life estate in decedent's widow, is sold for the payment of debts at a private sale, and the widow does not die until sixteen years after the sale, one of the remainder-men, who was a feme covert, and who at the time had knowledge of the sale, but no actual notice of the nature of the sale until several years thereafter, and who had no knowledge of improvements made by the purchaser, is not estopped from instituting a suit nineteen years after the sale by reason of her conduct. In such a case, however, the title of the purchaser is cured by the Act of April 4, 1901, P. L. 66.

*Decedent's estates—Orphans' court sales—Private sale for payment of debts—Act of April 4, 1901, P. L. 66.*

Where upon the petition of an administrator a decedent's real estate is sold for the payment of his debts in 1881, and thereafter the administrator

enters adequate security, the defect in the title of the purchaser by reason of the fact that a private sale was unauthorized by the Act of March 29, 1832, is cured by the Act of April 4, 1901, P. L. 66, validating private sales of real estate made upon petition of executors and administrators for the payment of debts; and this is the case although a suit was begun by a party claiming an interest in the real estate before the Act of April 4, 1901, was passed.

*Constitutional law—Statutes—Retroactive enactments—Act of April 4, 1901, P. L. 66.*

The legislature has the right to enact statutes which reach back to and change or modify the effect of prior transactions, provided retrospective laws are not forbidden, eo nomine, by the state constitution, and provided further that no other objection exists to them from their retrospective character.

The Act of April 4, 1901, P. L. 66, validating private sales of decedent's real estate made by executors or administrators for the payment of debts, although retroactive in character, is a proper enactment, and is constitutional.

*Constitutional law—Retroactive enactments—Pending legislation.*

The legislature, provided it does not violate the constitutional prohibitions, may pass retrospective laws such as in their operation may affect suits pending, and give to a party a remedy which he did not previously possess, or modify an existing remedy, or remove an impediment in the way of legal proceedings.

Argued May 13, 1902.   Appeal, No. 192, April T., by plaintiff, from judgment of C. P. Butler Co., March T., 1900, No. 51, on verdict for defendant in case of Emma J. Kiskaddon v. Findley B. Dodds, W. M. Starr, Peter Christie, trading as Starr & Company, and Thomas W. Phillips.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Ejectment for land in Penn township.   Before WHITE, P. J.

The facts appear by the opinion of the Superior Court.
The court gave binding instructions for defendant.
Verdict and judgment for defendant.   Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*W. H. Martin,* for appellant.—The sale was a private sale, and Dodds took no title : Jacoby v. McMahon, 174 Pa. 133.

The Act of April 4, 1901, P. L. 66, is unconstitutional: Fetter v. Wilt, 46 Pa. 460; Craig v. Kline, 65 Pa. 399; White v. Riggs, 27 Me. 114; Cottle's Appeal, 5 Pick. (Mass.) 483; Sigourney v. Sibley, 21 Pick. (Mass.) 101; Gay v. Minot, 3 Cush. (Mass.) 352; Peters v. Peters, 8 Cush. (Mass.) 529; Bloom v. Burdick, 1 Hill (N. Y.), 130; Peoples v. Corliss, 1 Sandf. (N. Y.) 228; Hendrick v. Cleaveland, 2 Vt. 329; Wattles v. Hyde, 9 Conn. 10; Babbitt v. Doe, 4 Ind. 355; Health v. Wells, 5 Pick. (Mass.) 140; Brodess v. Thompson, 2 Harr. & Gill, 120; Clapp v. Beardsley, 1 Aik. (Vt.) 168; Corwin v. Merritt, 3 Barb. (N. Y.) 341; Atkins v. Kinnan, 20 Wend. (N. Y.) 241; Clark v. Thompson, 47 Ill. 25.

If there was a want of jurisdiction to pronounce the judgment or decree, or to make the order or license of sale, no subsequent legislative validation can give validity to the same in the least degree: Finlayson v. Peterson, 5 N. Dak. 587 (67 N. W. Repr. 953); Perry v. Adams, 98 N. C. 167; Roche v. Waters, 72 Md. 264; Harrison v. Harrison, 106 N. C. 282; Pryor v. Downey, 50 Cal. 388; Hart v. Henderson, 17 Mich. 218; Hopkins v. Mason, 61 Barb. (N. Y.) 469.

Legislative enactments providing for the arbitrary and involuntary transfer of the property of one person to another without due process of law, whether with or without compensation therefor, are a flagrant violation of fundamental law, and possess not the least pretext of validity: Gilman v. Tucker, 128 N. Y. 190; Maxwell v. Grace, 85 Ala. 377 (5 So. Repr. 319); Cromwell v. MacLean, 123 N. Y. 474; Embury v. Conner, 3 N. Y. 511; Louisville School Board v. Kentucky Bank, 86 Ky. 150; Weltzer v. Kelly, 83 Ala. 440 (3 So. Repr. 747); Palairet's Appeal, 67 Pa. 479; York v. Texas, 137 U. S. 15; Norman v. Heist, 5 W. & S. 171; Greenough v. Greenough, 11 Pa. 489; DeChastellux v. Fairchild, 15 Pa. 18; Baggs's Appeal, 43 Pa. 512; Schafer v. Eneu, 54 Pa. 304; Shonk v. Brown, 61 Pa. 320; Richards v. Rote, 68 Pa. 255.

The operation of curative statutes does not extend to cases where the proceedings involved were anterior to the enactment of the statute, hence a retroactive statute cannot affect a pending cause. This has been expressly held by the following cases: Marion Co. v. Louisville & Nashville Railway Co., 91 Ky. 388; Thweatt v. Bank of Hopkinsville, 81 Ky. 1; Mayor v. Horn,

26 Md. 194; Gilman v. Tucker, 128 N. Y. 190; Adams v. Pamer, 51 Me. 480.

*T. C. Campbell*, with him *C. Walker* and *W. D. Brandon*, for appellees.—A moral obligation exists to confer this title. No one has a vested right to do wrong: Satterlee v. Matthewson, 16 S. & R. 191; Finlayson v. Peterson, 5 N. Dak. 487 (67 N. W. Repr. 953); Foster v. Essex Bank, 16 Mass. 245; Lycoming v. Union, 15 Pa. 166.

The orphans' court had jurisdiction: Lair v. Hunsicker, 28 Pa. 115; McPherson v. Cunliff, 11 S. & R. 422; Grier's App., 101 Pa. 412; Smith v. Wildman, 178 Pa. 245.

The plaintiff as heir at law of John Martin had, as against his creditors, no such vested rights in his property as would render a curative act unconstitutional: Wilkinson v. Leland, 2 Peters, 627; Lane v. Nelson, 79 Pa. 407; Weed v. Donovan, 114 Mass. 181.

That the act was passed after the bringing of this suit is no reason why it should be held to be unconstitutional: Windsor v. Des Moines, 110 Pa. 175; Mechanics', etc., Bank v. Allen, 28 Conn. 97; Hepburr v. Curts, 7 Watts, 300; Schenley v. Com., 36 Pa. 29.

Under the facts the want of authority in the orphans' court to approve the sale should not be taken advantage of at this time: Miller v. Spear, 21 W. N. C. 554; Jacoby v. McMahon, 189 Pa. 1; McPherson v. Cunliff, 11 S. & R. 422.

In substance, if not in form, the orphans' court sale to Dodds was a public one, the bid of $2,000 being merely a private agreement to increase his previous public bid of $1,700: Texas v. Hardenberg, 10 Wall. 68; Gwinn v. Lee, 6 Pa. Superior Ct. 646; Hudson v. Barrett, 1 Pars. 421; Weigle v. Mercer, 1 Pa. Superior Ct. 490.

While we contend that the plaintiff ought not to recover by reason of the equities in the defendant, although the ground therefor may not amount to an equitable estoppel, yet we also contend that under the proofs in the case the plaintiff is estopped, though she be a married woman: Grim's App., 105 Pa. 375; Horner v. Hasbrouck, 41 Pa. 169.

Though the circumstances in this case may not amount to a technical estoppel, yet they are entitled in equity to considera-

tion: Pollard v. Shaffer, 1 Dallas, 210; Wikoff v. Coxe, 1 Yeates, 353; Church v. Ruland, 64 Pa. 432; Jordan v. Cooper, 3 S. & R. 578; Lehr v. Beaver, 8 W. & S. 106; Murray v. Williamson, 3 Binn. 135; Smith v. Wildman, 178 Pa. 245; Menges v. Dentler, 33 Pa. 495.

OPINION by RICE, P. J., October 13, 1902:

John Martin died on August 29, 1879, seized of a property in the borough of Butler, on which he resided, and also of a farm in the township of Penn. The latter he devised to his wife for life, or during widowhood, and at her death to his children then living and the issue of any who might not be living at her death. He directed his executors to sell the former and to apply the surplus remaining after payment of his debts to the improvement of the farm.

The widow died on October 25, 1897, and on February 13, 1900, the plaintiff, one of the six children of the testator, brought this action of ejectment, in which she claimed to recover an undivided one-sixth part of the farm.

The facts upon which the defense rested are as follows:

Upon February 5, 1881, the widow, as sole acting executrix, presented her petition to the orphans' court, reciting that she had, without success, offered the town property at both public and private sale, and had no prospect of sale within a reasonable time, that the personal estate of the testator was insufficient for the payment of his debts, it having all been taken by the widow, as would appear by a true and conscionable appraisement thereof filed in the clerk's office, and praying the court to order the sale of the farm property for the payment of debts. There were attached to the petition as exhibits, a copy of the will, a precise description of the farm property and a schedule of debts. We have referred to these details because that seemed to be the best mode of answering the criticisms of the petition made by the appellant's counsel. We can discover in it no defect in form or substance which could be taken advantage of in any collateral proceeding to invalidate the decree made thereon.

Upon the same day, the court ordered that the executrix raise the sum of $2,500 by a sale of the farm, and that she give

bond with surety in double the amount of any sale conditioned according to the act of assembly.

Upon March 14, 1881, she made return that she had duly advertised the land for sale on March 1, on the premises and from thence adjourned the sale to March 7 at the courthouse, and then to March 8, at the same place, where it was bid up to $1,700 by F. Dodds, who was the highest bidder, but that she believed the price bid was insufficient, and asked leave to report the property unsold for want of bidders. Upon the same day the court confirmed the report and ordered it to be filed.

Two days later she presented a further petition reciting her former petition, the order to sell made thereon and her report, and alleging that the same necessity to sell still existed, that a better sale could be made privately than by public outcry, and that she had agreed to sell the farm, subject to the approval of the court, to Finley B. Dodds (shown by the testimony in this case to be the same person who had made the bid of $1,700 at the public outcry), for $2,000, one half to be paid April 1, 1881, and the balance in two equal annual payments with interest; that this was an advance of $300 over the sum bid at the public outcry, that it was a fair price, and the best that could be obtained under the circumstances. She therefore prayed the court to approve, ratify and confirm the sale, " with the same effect as if a decree for the sale thereof had preceded." Attached to this petition was a copy of the agreement with Dodds, together with his affidavit setting forth that he was ready and willing to comply with his agreement whenever a valid deed should be executed and delivered to him.

Thereupon the court made the following decree : " Now, March 16, 1881, the within petition was presented and read, and on due consideration, being satisfied that the facts therein alleged are true, the court approves, ratifies and confirms said sale with same effect as if a decree for the sale thereof had preceded, and direct the petitioners to execute a deed for said farm to the purchaser on his compliance with the terms of sale, she first to give bond with surety to be approved by the court in $4,000, conditioned according to law."

Pursuant to this decree the executrix gave bond, which was duly approved and filed, and executed and delivered a deed to Dodds dated March 28, 1881. He complied with the agree-

ment as to the payment of the purchase money, the judgment given for the deferred payments being satisfied in full on April 9, 1883. The uncontradicted testimony of several witnesses is to the effect that $2,000 was a full and fair price for the land at the time of the sale. It further appears that the executrix duly accounted for the purchase money and interest and applied the same to the payment of debts and the expenses of administration, and that by her final account, confirmed absolutely January 1, 1886, there was a balance due her of $380.03. Subsequently, by virtue of the power contained in the will, she sold the town property for the payment of this balance and other debts.

Dodds took possession of the farm about the time of his purchase, and between that time and 1893, according to his testimony, expended in the neighborhood of $4,000 for improvements, consisting of a house, a bank barn and other buildings, built fences and otherwise improved the land. During the whole of this time the plaintiff lived at Freeport, some twenty miles distant, but on several occasions visited in the neighborhood. She admits that she learned of the sale to Dodds about the time it was made, possibly within three months thereafter, and that she was advised by her attorney as early as 1885 that she still had an interest in the land, and yet it was not until a short time before the suit was brought, which was in February, 1900, that she gave Dodds any notice whatever of her claim. The court gave binding instructions in favor of the defendants.

Prior to the Act of May 9, 1889, P. L. 182, proceedings in the orphans' court, upon the petition of an executor or administrator for an order of sale for the payment of debts merely, were governed by the act of March 29, 1832, which in the 54th section provided, that "public notice of such sale shall be given by the executor, administrator or guardian, as the case may be, at least twenty days before the day appointed therefor, by advertisement in at least one newspaper," and by handbills. The act clearly contemplated a public sale. True, the first paragraph of the syllabus in Hower's Appeal, 55 Pa. 337 (1867), would seem to show that a private sale might be sustained under the Price Act upon such a petition as was presented in this case. It reads: "That there are debts not of

record against a decedent and his personal estate is insufficient. to pay them, are sufficient grounds to decree a sale of his land, under the act of April 18, 1853 (Price Act), to pay his debts." But the reporter went further than the case required; and in Spencer v. Jennings, 114 Pa. 619, decided in 1887, it was distinctly held that the act of 1853 does not apply where the petition is by an executor or administrator for an order of sale for payment of debts.

Upon the reargument of the case in 1888, it was asserted by counsel that since the act of 1853 private sales by administrators for payment of debts were almost innumerable, and that the practice had been supposed to be sanctioned by what was said in Hower's Appeal, supra, and Grenawalt's Appeal, 37 Pa. 95, but the court, after full reconsideration of the question, adhered to its former ruling (Spencer v. Jennings, 123 Pa. 184), and reaffirmed it in Jacoby v. McMahon, 174 Pa. 133; 189 Pa. 1. It follows, that, whatever misapprehension of the scope of the act of 1853 there may have existed prior to the decision in Spencer v. Jennings, that act cannot be invoked in aid of the proceedings in this case.

But it is argued with much plausibility that after the executrix made return that she had not received a sufficient bid at the public sale, and after the bid had been increased privately by Dodds, the court might have permitted an amendment of the return setting forth that he had agreed to increase his bid, and then confirmed the sale as a public sale. Granting for the sake of the argument only that this might have been done, the fact remains that it was not done; and in determining whether this was a. public or a private sale, we must take the record as we find it. We cannot see that the legal effect of the record is different because the increased price was offered by a former bidder and not by a new bidder, as was the case in Jacoby v. McMahon, supra. We assume that in this collateral proceeding, in which we are asked to treat as a nullity a decree that has been fully carried into effect by the delivery of a deed and payment of the purchase money, and has stood unimpeached for nineteen years, we have a right to look into the whole record (West v. Cochran, 104 Pa. 482), and that it is our duty to give it, as a connected whole, every reasonable intendment

in favor of the purchaser's title; but even so, we must still con-clude that the sale confirmed by the court was a private sale.

It is further urged that under the facts, even in the absence of the curative act to which we shall refer hereafter, the want of authority in the orphans' court to approve the sale, cannot be taken advantage of by the plaintiff at this time. Let us look a little more closely at the facts pertinent to this question. The plaintiff admits that she learned of the sale to Dodds, probably within three months after it was made, but she does not admit, and there is no direct testimony, that she had actual notice of the nature of the sale, or of the defect in the pur-chase title until 1885. At that time he had paid all of the purchase money. She further testifies that she did not know of the improvements made by him until after they were made. She was a feme covert; moreover, the life estate of her mother in the land was not terminated until October, 1897. By keep-ing silent during all these years concerning a claim which she intended to assert upon her mother's death, she did not exhibit that zealous regard for the rights of others which calls for com-mendation; but we cannot say that binding instructions for the defendants can be sustained' upon the ground that she was estopped by her conduct to take advantage of the defect in the orphans' court proceedings.

We come then to the Act of April 4, 1901, P. L. 66, which provides as follows: " That all private sales of real estate of decedents, heretofore made under and by virtue of decrees of orphans' courts upon petition of executors or administrators for payment of debts of such decedent, respectively, shall and the same are hereby declared to be valid and effectual to vest in the purchasers the title of such decedents in the real estate so decreed to be sold. Provided, that adequate security, condi-tioned for the faithful application of the purchase money, shall have been given by such executors or administrators, as the case may be, in accordance with such decrees: Provided, fur-ther, that this act shall not apply to any case heretofore judi-cially adjudicated." This case is clearly within the terms of the act. Not only was security given but the condition of the bond was fully complied with by the actual application of the pur-chase money to the payment of debts. The additional circum-stance that the sale of the farm and the appropriation of the

purchase money to the payment of debts went in relief of the town property in which the plaintiff had an interest, was alluded to upon the argument as strengthening the defendant's position; but we do not regard this as important in determining the effect of the act of 1901, and its validity as applied to the case in hand.

It seems needless to cite authorities for the proposition that in our jurisprudence lands of a decedent, like his goods, are assets for the payment of his debts. " When a man dies in Pennsylvania, his estate, real and personal, comes within the jurisdiction of the orphans' court, to be administered, first of all, for the benefit of creditors, and next for legatees, devisees and heirs : " Horner v. Hasbrouck, 41 Pa. 169. When on February 5, 1881, the executrix presented her petition to the orphans' court, showing that the personal estate was insufficient to pay the decedent's debts, and in other respects complying substantially with the statutory requirements, and praying for an order to make sale of his real estate, the jurisdiction of the court attached in form to the described real estate, and pursuant to its decree a sale was made for a full and fair price which the court ratified and approved. The defect in the proceedings, by which the conversion of the land into money was consummated, consisted, not in the want of power or jurisdiction in the orphans' court to decree a sale of the testator's real estate for the payment of debts, as was held to be the case in Smith v. Wildman, 178 Pa. 245, nor in the petition by which the exercise of this power was invoked, nor in the security required and given for the faithful application of the money, but in the mode of sale. The act of 1901 operates retroactively to cure this defect in the defendant's title and thus to protect him in the enjoyment of property to which in morals he had a good title before. There is no doubt of the right of the legislature to pass statutes which reach back to and change or modify the effect of prior transactions, provided retrospective laws are not forbidden, eo nomine, by the state constitution, and provided further that no other objection exists to them than their retrospective character : Cooley's Const. Law, *369. This doctrine has been recognized in numerous Pennsylvania decisions to which it is unnecessary to refer. Apart from its retrospective character, the only objection to the act of 1901, as ap-

plied to the case we have before us, is, that it deprived the plaintiff of the right to take advantage of a defect in the proceedings, an irregularity which in no way injured her, and thereby obtain the possession of property to which, in foro conscientiae, she can lay no just claim. But her right was no more sacred than that of a married woman to take advantage of a defect in the acknowledgment of her deed, as to which curative acts have been passed, and held to be constitutional. See N. Y., etc., Land Company v. Weidner, 169 Pa. 359, and cases there cited. Other instances where curative legislation has been held valid are referred to in Lycoming v. Union, 15 Pa. 166, 171, and Grim v. Weissenberg School District, 57 Pa. 433. In some cases the broad doctrine is asserted that in the nature of things there can be no vested right to violate a moral duty or to resist the performance of a moral obligation. In others it is conceded that the acts divested vested rights, but being within the legitimate scope of legislative power were not invalid. In the case last cited, Sharswood, J., said: " All acts curing irregularities in legal proceedings, necessarily divest vested rights of the parties by closing the mouths of those who could otherwise avail themselves of such irregularities to escape from the fulfillment of what is a moral obligation ; and, but for the irregularity would be a legal liability. So wherever formal defects in the execution or acknowledgment of deeds, mortgages or other conveyances, are remedied by legislation, those who might have pleaded and relied on such defects are debarred of that which would otherwise have been a legal vested right. To deny the validity of such laws would be to run the ploughshare through hundreds of titles which are founded and repose in security upon them." But the case most closely analogous to the present is Lane v. Nelson, 79 Pa. 407, and we feel warranted in referring to it at length.

There letters of administration upon the estate of John Nelson were duly granted in Jefferson county; the administrator applied to the orphans' court of that county for an order of sale of lands, described as being in Jefferson and Clearfield counties, for payment of debts ; the order was issued, the land sold, sale confirmed by the court, the purchase money paid to the administrator, and appropriated to the payment of debts. It was afterwards discovered that the land in controversy was entirely in

Clearfield county.    After an ejectment brought by the heirs of Nelson against those claiming under the purchaser, an act was passed—in 1873 when special legislation was not forbidden by the constitution—in which it was declared that the sale " be and the same is hereby ratified and confirmed, and the same shall be taken, deemed and held to be a valid and effectual sale and to have like force and effect as if the said real estate when sold was situated in the county of Jefferson, and all proceedings therefor had been found regular and in accordance with the statutes in such case made and provided." It was held, reversing the court below, that the act was constitutional and the purchaser's title thereby validated. In that case, as in this, the order of sale was made by the court having jurisdiction of the accounts of the executor or administrator, it was made for the payment of debts upon a proper petition and the money was so applied, but there was a defect in the proceedings resulting from the failure of the court to pursue strictly the provisions of the act of 1832, which, if not remedied, the heirs had a legal right to take advantage of and thereby recover the land from the purchaser. In the course of the opinion the court drew a distinction between a retroactive statute passed to render valid judicial proceedings which were utterly void for want of jurisdiction, and a retroactive statute applying to cases where the jurisdiction has attached, and there has been a formal defect in the proceedings, where the equity of the party is complete, and all that is wanted is legal form, and held that the case belonged to the latter class, and, therefore, it was " within the recognized power of the legislature to correct such defect and to provide a remedy for the legal right." There is equal reason for holding that the case in hand belongs to the same class. We conclude the discussion by quoting at length from the opinion of PAXSON, J.: " We have here the case of a defect in a judicial proceeding in a case in which the court had jurisdiction, with a complete equitable right in the purchaser at the orphans' court sale, but without any legal form or remedy by which such right may be asserted and sustained. The act of assembly does no more than provide such legal remedy. It interferes with no man's right. It does not take the property of one person and give it to another. It is true, it does prevent the plaintiffs below from wresting property for

which they have paid nothing from the hands of honest holders who have paid full value.  The plaintiffs are mere volunteers. It is true that upon the death of John Nelson his real estate descended to and vested in his heirs.  But it vested in them subject to the payment of his debts.  It was sold under the authority of a judicial decree for that purpose ; that the proceedings were technically defective and have been validated by a legislative enactment works no injustice to any of the heirs at law of John Nelson." If the names of the parties be changed this language fits the case as if it had been in view when it was written.  We can add nothing further to the discussion.  Our conclusion is, that the act of 1901, as applied to a case where the sole objection is that the sale approved by the court was a private sale, is not unconstitutional.

The case of Lane v. Nelson is also authority for holding that the mere fact that the plaintiff had brought suit before the passage of the act of 1901 does not prevent its operation upon the sale in question.  " The legislature, provided it does not violate the constitutional prohibitions, may pass retrospective laws, such as in their operation may affect suits pending, and give to a party a remedy which he did not previously possess, or modify an existing remedy, or remove an impediment in the way of legal proceedings : " Hepburn v. Curts, 7 Watts, 300.  This doctrine has been recognized in numerous cases, amongst which may be mentioned Schenley v. Commonwealth, 36 Pa. 29, and Grim v. Weissenberg School District, 57 Pa. 433. In the case last cited an illegal tax had been collected, under protest ; after the party had brought suit to recover it back an act legalizing the tax was passed, and it was held that the act defeated the cause of action and was not unconstitutional, even as applied to pending actions.  " In the cases in which the constitutional power of the legislature to modify, enlarge, or repeal existing remedies, and to remove legal impediments in the way of recovery, even when pending in a court of error, has been recognized, the right to costs has never been supposed to interpose an obstacle."

Judgment affirmed.